UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**ROQUE "ROCKY" DE LA FUENTE,**
**BECKY HERDBERG,  JOSE E. HELENA,**
**and JOSE GILBERTO PEREZ,**
     Plaintiffs

v.                     C.A NO. <u>1:16-CV-00256-RWS</u>

**BRIAN KEMP,**
**GEORGIA SECRETARY OF STATE**; and
**THE DEMOCRATIC PARTY OF GEORGIA,**
     Defendants

<u>**MOTION FOR  FOR A PRELIMINARY INJUNCTION**</u>
<u>**AND PERMANENT INJUNCTION**</u>

Plaintiffs file this Motion For A Preliminary and Permanent Injunction seeking a determination that certain provisions of the Georgia Election Code, governing access to the Democratic Presidential Primary Ballot in Georgia set for March 1, 2016, are unduly burdensome, infringe upon constitutional rights, lack a compelling interest, and are, therefore, unconstitutional.

Plaintiff Roque "Rocky" De La Fuente is a candidate for President of the United States, a registered democratic voter, an Hispanic, and has selected the Democratic Party as the political party with whom he chooses to seek the nomination for President by registering with the Federal Election Commission as a presidential candidate of the Democratic Party as of October 1, 2015.  Plaintiff Roque "Rocky" De a Fuente is a well known business owner and a resident of San Diego, California, who meets the presidential qualifications prescribed in Article 2, Section 1 of the United States Constitution in that he is a natural born citizen of the United States, has attained the age of 35, and has been for 40 years a resident

within the United States.

In support of this Motion Plaintiffs rely on the Georgia statutes cited and request this Court to take judicial notice thereof.

Plaintiffs rely on the exhibits attached to the original complaint in this case.

## ELECTION STATUTES IN QUESTION

OCGA 21-2-190 et seq. provides that the Democratic Party "shall submit to the Secretary of State a list of the names of the candidates of such party to appear on the presidential preference primary ballot." and "not later than 60 days preceding the date on which a presidential primary is to be held." OCGA 21-2-193.

OCGA 21-2-199 provides that the Democratic Party "shall prescribe by state party charter, bylaws, or rules and regulations regarding qualifying of candidates and the fixing and qualifying fees, if any."

The Defendant Democratic Party of Georgia Executive Committee's decision in applying these statutes, particularly OCGA 21-2-193, constitutes state action.

## DEMOCRATIC PARTY RULES

The Democratic National Party provides for the eligibility of its Presidential Candidates in "The Call" (Article VI. Presidential Candidates):

> The term "presidential candidate" herein shall mean any person who, as determined by the National Chairperson of the Democratic National Committee, has accrued delegates in the nominating process and plans to seek the nomination, has established substantial support

for his or her nomination as the Democratic candidate for the Office of the President of the United States, is a bona fide Democrat whose record of public service, accomplishment, public writings and/or public statement affirmatively demonstrates that he or she is faithful to the interests, welfare and success of the Democratic Party of the United States, and will participate in the Convention in good faith.

The Georgia 2016 Delegate Selection Plan provides, in relevant part:

A presidential candidate gains access to the Georgia presidential preference primary ballot by requesting that the Executive Committee of the Democratic Party of Georgia have the candidate's name placed on the ballot. The Executive Director of the Democratic Party of Georgia will reach out to all campaigns that meet the requirements of Rule 12.M and Article VI of the Call by October 1, 2015. The Executive Director will request from the campaign an official signed letter from the campaign (either scanned or mailed) that indicates the candidate wishes to be placed on the Georgia ballot. The Executive Committee will meet on October 29, 2015 and will select the names to be placed on the ballot and intends to include all widely recognized, legitimate candidates that meet the requirements of Rule 12.K and Article VI of the Call...

● Georgia does not impose filing and petition requirements, nor are there filing fees. Deadlines prescribed by state law are set at the discretion of the secretary of State and have not yet

been established; (Rule 1.A.7) and

● The Democratic Party does not impose filing and petition requirements or filing fees nor are there deadlines imposed by state party rules.  Candidates will need to submit a signed letter to the State Party that declares their desire to be placed on the ballot prior to October 29, 2015...

(Citing OCGA §21-2-193; Rule 11.B, Rule 14.A, Rule 14.B, Rule 14.D, Rule 14.E, & Rule 14.H)

Georgia 2016 Delegation Selection Plan, Section II, Presidential Candidates A. Ballot Access.

The 2016 Delegate Selection Rules for the Democratic National Convention provides for the qualifications for presidential candidates under Rule 12.K Presidential Preference:

1. Based on the right of the Democratic Party to freely assemble and to determine the criteria for its candidates, it is determined that all candidates for the Democratic nomination for President or Vice President shall:

a. be registered to vote in the last election for the office of President and Vice President; and

b. have demonstrated a commitment to the goals and objectives of the Democratic Party as determined by the National Chair and will participate in the Convention in good faith.

## PLAINTIFFS HAVE BEEN DENIED THE RIGHT TO HAVE ROQUE "ROCKY" DE LA FUENTE PLACED ON THE

## MARCH 1, 2016 GEORGIA DEMOCRATIC PRIMARY BALLOT

Plaintiff Roque "Rocky" De La Fuente timely complied with all rules to have his name placed on the ballot. (Ex. A)

The decision of the Democratic Party's Executive Committee of the Democratic Party in denying to submit Plaintiff's name to the Georgia Secretary of State for inclusion on the Presidential ballot violates due process and was arbitrary and capricious and contrary to the party's own rules and the Georgia statutes as well as the United States Constitution. (Ex. B)

Plaintiff Roque "Rocky" De La Fuente moved for reconsideration but that was denied without explanation by Defendant Party. (Ex. C)

In its only written or recorded explanation of its decision, the Defendant Democratic Party's Executive Committee claimed its action was not state action and that the Committee had a "right" to "exclusively determine" which names to put on the ballot; admitting it acted in a totally arbitrary and capricious manner:

> Georgia law does not specify any criteria to be used in determining names to be placed on the non-binding Presidential Primary Ballot. (Ex. C, pg.1)

The all Caucasian list submitted by the Defendant Democratic Party to the Georgia Secretary of State included Hillary Clinton, Bernie Sanders, Martin O'Malley, Michael Steinberg, and Larry Lessig.

Plaintiff Roque "Rocky" De La Fuente is on the Democratic Presidential ballots in twenty-five other states and territories.

The Defendant violated Plaintiffs' rights under the Fourteenth Amendment

by failing to include the name Roque "Rocky" De La Fuente on the list of candidates to be placed on the Georgia Presidential Primary Ballot for March 1, 2016.

Plaintiff Roque "Rocky" De La Fuente  has been harmed by the decision of the Democratic Party of Georgia in that voters in Georgia will not be able to vote for the Plaintiff for President and Plaintiff will not be able to have delegates seated at the Democratic National Convention.

Plaintiff Becky Herdberg has been harmed in that she will not be able to exercise her right to vote for her candidate of preference for the Democratic nominee for President in violation of party rules, state law, Article I, Section 4 of the U. S. Constitution,  and the First and Fourteenth Amendments to the U.S. Constitution

The decision of the Executive Committee of the Democratic Party was arbitrary and capricious and their delegate selection plan was unconstitutionally vague depriving Plaintiffs of due process and that plan was implemented in a manner which deprived the Plaintiffs of due process; and that plan was implemented in a manner that deprived the Plaintiffs of due process.

The decision of the Executive Committee of the Democratic Party of Georgia's not to place Plaintiff Roque "Rocky" De La Fuente on its presidential primary ballot acts as a de facto deprivation of access to the General Presidential election process because 47 states have enacted what are known as "Sore Loser Laws."  These laws prevent a losing candidate in a primary election from subsequently filing to run as a listed candidate in the general election as the nominee of another party or as an independent candidate.   Plaintiff Roque "Rocky" De La Fuente has already been accepted on the ballot in twenty-five

states and territories, he can longer run an effective Independent candidate campaign.  By denying Plaintiff access to its Presidential Primary, the Georgia Democratic Party has effectively precluded any resident of Georgia from voting for him altogether.

The Democratic Party of Georgia has a non-discretionary duty to prepare and approve a list of all recognized Democratic presidential Candidates, not just the ones they favor or choose; the process they employed is so vague and ambiguous that it deprives the Plaintiffs of due process.  The Georgia Democratic Party has deprived the large Hispanic population of Georgia a choice to vote for a non-Caucasian candidate.

## PLAINTIFFS HAVE BEEN DISCRIMINATED AGAINST BECAUSE OF HIS ETHNICITY

The Defendants' refusal to include Plaintiff Roque "Rocky" De La Fuente on the list of approved presidential candidates has resulted in de facto discrimination against Plaintiffs on the basis of national origin and ethnicity and denied them equal protection of the laws.  Further, by excluding Plaintiff Roque "Rocky" De La Fuente from the Democratic Party Ballot the Defendants' actions have resulted in de facto discrimination against all voters in Georgia who wish to vote for an Hispanic candidate.

This discrimination violates 42 U.S.C. §200d et seq., known as Title VI of the Civil Rights Act of 1964 and the Fourteenth Amendment.

As referenced above, the candidates who have been included on the Georgia Democratic Party ballot are all Caucasian: Hillary Clinton, Bernie Sanders, Martin O'Malley, Michael Steinberg, and Larry Lessig.  This is not the first time to all

white primary in Georgia has been challenged. <u>Smith v. Allwright</u>, 321 U.S. 649, 664, 64 S.Ct. 757, 765, 88 L.Ed. 987 (1944).

In spite of Georgia's large Hispanic population, 9.3% according to the United States Census Bureau, by denying to place Plaintiff's name on the Georgia democratic ballot, the Executive Committee is denying Hispanic voters in Georgia the opportunity to vote for an Hispanic candidate.

The Georgia Democratic Party's Charter states that the party "shall afford all persons full, timely, and equal opportunities to participate without prejudice on the basis of gender, race, age, color, creed, national origin, religion, economic status, sexual orientation, ethnic identity, or physical disability."Article I, Section 2.2.

While the Defendant Executive Committee of the Democratic Party of Georgia is a private organization, and may, speaking through their rules, choose to define their associational rights by limiting who can participate in any process leading to the selection of their delegates to the National Convention, they may not refuse to allow ballot access to a state run presidential primary election arbitrarily, where such refusal results in discrimination against a candidate based on racial and national origin.

Although the First Amendment to the United States Constitution protects the right of association, there are limits on this freedom which derive, in part, from 42 U.S.C. §1981; further, when primaries become part of the machinery for choosing officials, state and national, as they have here, the same tests to determine the character of discrimination or abridgment should be applied to the primary as are applied to the general election. <u>Smith v. Allwright</u>, 321 U.S. 649, 664, 64 S.Ct. 757, 765, 88 L.Ed. 987 (1944).

## **CONCLUSION**

Thus, Georgia's statutory scheme as implemented by the Democratic Party to keep Plaintiff  Fuente off the presidential ballot is unduly burdensome, infringes upon constitutional rights, lack a compelling interest, and is therefore, unconstitutional.

The proper relief for unconstitutional denial of ballot access is an order directing ballot access inclusion.

Wherefore, Petitioners request this Court to enter an order granting the Motion For Summary Judgment or alternatively, grant the Motion For Preliminary and Permanent Injunction.

*S/J.M. Raffauf*
J.M. Raffauf
Ga Bar # 591762
Attorney for Plaintiffs
1575 Oakwood Drive
Roswell Ga 30075
404-452-6390
Raffaufmike@gmail.com


*/S/ JERRY WILSON*
Ga. Bar # 768610
Attorney for Plaintiffs
P.O. Box 971
Redan Ga. 30074
404-431-6262
Lawoffice1998@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this Plaintiffs' Memorandum in support of a temporary and permanent injunction, via CM/ECF system, which will send notification of such filing to the following, and Plaintiff sent an additional copy by U.S. Mail:

Sam Olens, Attorney General of GA
132 State Judicial Bldg.
40 Capitol Square
Atlanta GA 30334

This the 29th day of January, 2016.

S/ J.M. RAFFAUF
J.M. Raffauf

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**ROQUE "ROCKY" DE LA FUENTE,
BECKY HERDBERG,  JOSE E. HELENA,
and JOSE GILBERTO PEREZ,**
     Plaintiffs

v.                                                C.A NO. <u>1:16-CV-00256-RWS</u>

**BRIAN KEMP,
GEORGIA SECRETARY OF STATE**; and
**THE DEMOCRATIC PARTY OF GEORGIA,**
     Defendants

<u>**MEMORANDUM IN SUPPORT OF
MOTION FOR A PRELIMINARY AND PERMANENT  INJUNCTION**</u>

Plaintiffs have moved this Motion For a Preliminary and Permanent Injunction pursuant to Rule 65, F.R.C.P.   The Plaintiffs seek a determination that certain provisions of the Georgia Election Code, allowing the political parties to determine ballot access to the presidential ballot in Georgia, are unduly burdensome, infringe upon constitutional rights, lack a compelling interest, and are, therefore, unconstitutional.

This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and for violation of the "Elections" Clause of Article I, Section 4 of the United States Constitution challenging the constitutionality of OCGA §§ 21-2-190, 21-2-193 and 21-2-199 as applied by the Democratic Party of Georgia to deny the name of Roque "Rocky" De La Fuente to appear on the March 1, 2016 Presidential Preference Primary.  This Court has jurisdiction pursuant to 28 U.S.C.

Page -1-

§§ 1331, 1343, 1367 and 2201.

Plaintiff Roque "Rocky" De La Fuente is a candidate for President of the United States, a registered democratic voter, an Hispanic, and has selected the Democratic Party as the political party with whom he chooses to seek the nomination for President by registering with the Federal Election Commission as a presidential candidate of the Democratic Party as of October 1, 2015.  Plaintiff Roque "Rocky" De a Fuente is a well known business owner and a resident of San Diego, California, who meets the presidential qualifications prescribed in Article 2, Section 1 of the United States Constitution in that he is a natural born citizen of the United States, has attained the age of 35, and has been for 40 years a resident within the United States.

Plaintiff Roque "Rocky" De La Fuente timely complied with all rules to have his name placed on the ballot. (Ex. A)  21. The decision of the Democratic Party's Executive Committee of the Democratic Party in denying to submit Plaintiff's name to the Georgia Secretary of State for inclusion on the Presidential ballot violates due process and was arbitrary and capricious and contrary to the party's own rules and the Georgia statutes as well as the United States Constitution. (Ex. B)  Plaintiff Roque "Rocky" De La Fuente moved for reconsideration but that was denied without explanation by Defendant Party. (Ex. C)  In its only written or recorded explanation of its decision, the Defendant Democratic Party's Executive Committee claimed its action was not state action and that the Committee had a "right" to "exclusively determine" which names to put on the ballot; admitting it acted in a totally arbitrary and capricious manner:

Georgia law does not specify any criteria to be used in

determining names to be placed on the non-binding Presidential

Primary Ballot. (Ex. C, pg.1)

The list submitted by the Defendant Democratic Party to the Georgia Secretary of State included Hillary Clinton, Bernie Sanders, Martin O'Malley, Michael Steinberg, and Larry Lessig.

## A. THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION

Four factors must be considered in determining whether a party is entitled to a preliminary injunction: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257 (11th Cir. 2001); Hamilton's Bogarts Inc. V. Michigan, 501 F.3d 644, 649 (6th Cir. 2007).

When state election schemes impose undue and severe burdens on the Plaintiffs' constitutional rights, the schemes must be struck down unless they serve narrowly tailored compelling state interests. Swanson v. Worley, 490 F.3d 894 (11th Cir.2007).  Thus, in order to regulate the election process and ballot access requirements, state must show that the restrictions are narrowly tailored to serve compelling state interests. Green v. Mortham, 155 F.3d 1332, 1335 (11th Cir. 1998).

**1. Likelihood of Success on the Merits.**  Allowing the Democrats complete discretion has led to the re-establishment of the banned white primary, Smith v. Allwright, 321 U.S. 649, 664, 64 S.Ct. 757, 765, 88 L.Ed. 987 (1944),  and thus falls outside the boundaries drawn by the U.S. Supreme Court for presidential

elections.  The Court must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Plaintiffs are seeking to vindicate.  <u>Swanson v. Worley</u>, 490 F.3d 894, 902 (11th Cir. 2007).  Then it must identify and evaluate the precise interests set by the state as justification for the burden imposed.  The court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the Plaintiffs' rights.

Ballot access restrictions implicate the constitutional rights of voters to cast their votes effectively.  <u>Williams v. Rhodes</u>, 393 U.S. 23, 30 (1968).  In fact. "No State can pass a law regulating elections that violates the Fourteenth Amendment's command that ... [denies] to any person the equal protection of the laws." <u>Id.</u> Furthermore, "[no right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." <u>Id.</u> Citation omitted.  "Other rights, even the most basic, are illusory if the right to vote is undermined." <u>Id.</u>

Here, Defendants cannot show any compelling interests which would justify excluding Plaintiff from the ballot.  Georgia's current statutory scheme compromises political stability and voter's essential rights to vote for their candidates.  Therefore, Plaintiffs are likely to succeed on the merits because Georgia's statutory scheme is unduly burdensome, infringes upon constitutional rights, lack a compelling state interest, and are, therefore, unconstitutional.

**2. Irreparable Harm to the Plaintiff.**  As argued herein, the right to participate in elections is one of the most fundamental rights in our democracy, and there is no substitute for denial of that right to a person or party.  The loss of

an opportunity to participate in an election represents irreparable harm that cannot be compensated by money damages.  If the law stands, Plaintiffs will have no other remedy. "No damages or other compensation can compensate for a missed election." Duke v. Connell, 790 F. Supp. 50, 52 (D.C. R.I. 1992).  See also Libertarian party of Ohio v. Brunner, 567 F. Supp. 1006, 1014 (S.D. Ohio 2008), concluding that "denial of access to the ballot" constitutes irreparable harm.

Georgia's statutory scheme prevents Plaintiff De La Fuente from running not only in the primary but also in the general election.  Since this Plaintiff has already been accepted on the ballot in twenty-five states and territories, he is precluded from running as an independent candidate in those states because of "sore loser" laws.  These laws prevent a losing candidate in a primary election from subsequently filing to run as a listed candidate in the general election as the nominee of another party or as an independent candidate.

**3. No Substantial Harm to Others.**  Plaintiffs participation in the election cannot harm anyone.  The relief sought will only guarantee that voters will have more choices and an Hispanic candidate and his voters can participate in the democratic process.

**4. The Public Interest Will Be Served.** The relief sought herein will further the public interest by providing voters with choices. It is clear that the voting public is not happy with the stranglehold that the Republican and Democratic parties have on the electoral process and the legislative process. Inclusion of Plaintiff's name on the primary ballot will promote participation in the primary, encourage debate, and illuminate bias and discrimination against Hispanic candidates.

## B. THE CONSTITUTIONAL RIGHT TO BALLOT ACCESS

The right to vote, the right to associate for political purposes and the right to be a political candidate are fundamental constitutional rights protected by the First and Fourteenth Amendments.  Burdick v. Takushi, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063 (1992); Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214, 224, `09 S.Ct. 1013 (1989); Tashjian v. Republican Party of Conn., 479 U.S. 208, 214, 107 S.Ct. 544 (1986); Anderson v. Celebrezze, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569 (1983)

First Amendment rights are implicated whenever a state action imposes a barrier to the free exercise of the voting franchise or any First Amendment Right. That barrier does not have to wholly prevent voters from exercising a First Amendment Right to be found unconstitutional.  And "that right is burdened when the state makes it more difficult for these voters to cast ballots."  Molinari v. Bloomberg, 564 F.3d 587, 604 (2nd Cir. 2009)  The First Amendment creates an open marketplace where ideas, most especially political ideas, may compete without government interference." N.Y. State Bd. Of Elections v. Lopez Torres, 552 U.S. 196, 208, 128 S.Ct. 791 (2008).  The First Amendment "has its fullest and most urgent application" to speech uttered during a campaign for political office.  Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 223, 109 S.Ct. 1013 (1989).  Thus any limits on speech in the context of a political campaign is subject to strict scrutiny. Citizens United v. FEC, 558 U.S. 50, 130 S.Ct. 876, 882 (2010).

In ballot access cases, the first amendment right of free association is found in three associational relationships: (1) The right of voters to associate through the organization of a political party.  (2) The rights of an organized political party to

control the determination of those candidates with which it associates.  (3) The rights of an organized political party to control its nominations by controlling who may participate in such nominations.  Democratic Party of the United States v. Wisconsin ex rel La Follette, 450 U.S. 107, 101 S.Ct. 1010 (1981).

The implications of the Equal Protection Clause on the constitutionality of ballot access statutes generally focuses on (a) the disparate treatment of major and minor parties and (b) the disparate treatment of the candidates of parties and independent candidates. See Anderson v. Celebreze, 460 U.S. 768, 794, 103 S.Ct. 1564 (1983):

A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment.  It discriminates against those candidates and - of particular importance - against those voters whose political preferences lie outside the existing political parties.  By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas.

## C. JUDICIAL REVIEW OF ELECTION LAWS

Political parties exist to advocate positions and philosophies and serve as a vehicle where like-minded people can assemble.  Under our representative and elective system of government, "a basic function of a political party is to select candidates for public office to be offered to voters at general elections." Kusper v. Pontikes, 414 U.S. 51, 58, 94 S.Ct. 303, 308 (1973).  "The right to form a party for the advancement of political goals means little if a party can be kept off the

election ballot and thus denied a equal opportunity to win votes." <u>Williams v. Rhodes</u>, 393 U.S. 23, 31, 89 S.Ct. 5 (1968).  Thus, "only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." <u>Id.</u> [Citation omitted.]

Ballot access limiting statutes must be considered in the aggregate: "The concept of totality is applicable... in the sense that a number of facially valid provisions of elections laws may operate in tandem to produce impermissible barriers to constitutional rights." <u>Storer v. Brown</u>, 415 U.S. 724,737 94 S.Ct. 1274, 1282 (1974).  "A court should examine the cumulative burdens imposed by the overall scheme of electoral regulations upon the rights of voters and parties to associate through primary elections." <u>Clingman v. Beaver</u>, 544 U.S. 581, 608, 125 S.Ct. 2029 (2005) (O'Connor concurring).

The general analytical framework for evaluating constitutional challenges to state election laws was set out in <u>Anderson v. Celebreze</u>, 460 U.S. at 789, and imposes the following requirements:

> [The Court] must **first** consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It **then** must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule.  In passing judgment, the Court must not only determine the **legitimacy** and **strength** of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights.

Strict scrutiny applies whenever fundamental rights are implicated. <u>Dunn v. Blumstein</u>, 405 U.S. 330, 336, 92 S.Ct. 995 (1972).  Under the strict scrutiny standard of review, a statue can be upheld only if it is designed to achieve its objective in the least restrictive means. <u>Illinois State Br. Of Elections v. Socialist</u>

Worker's Party, 440 U.S. 173, 185, 99 S. Ct. 983 (1979). This strict scrutiny "requires the government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Citizens United, 130 S.Ct. At 882.  And, "the strict scrutiny test is applicable under the Equal Protection Clause to classifications affecting the exercise of fundamental rights."  Fulani v. Krivanek, 973 F.2d 1539, 1542 (11th Cir. 1992).

In testing the legitimacy of a State's asserted interest, a court is not required to accept at face value any justification the state may give for its practices.  Rather, the court must determine the offered justification is real, and not merely a pretextual justification for its practices.  Reform Party of Allegheny County v. Allegheny County Dep't of Elections, 174 F.3d 305, 315 (3rd Cir. 1999); Libertarian Party of Ohio v. Blackwell, 462 F.3d 579 (6th Cir. 2006).

Even an otherwise legitimate state concern cannot be accepted without evidence that the problem the state is asserting is real. Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 128 S.Ct. 1184 (2008). Therefore, it is insufficient for the state to merely assert a defense, it must present evidence of a real problem that its ballot access limiting statutes seek to address.

In addition to having a legitimate reason for its practice, the state must also show that its practice actually corrects or mitigates the problem that justifies its action. Reform Party of Allegheny County v. Allegheny County Dep't of Elections, 174 F.3d 305, 315 (3rd Cir. 1999).

There are clearly limits on the State's interests when elections to federal office are involved: "The Framers intended the Elections Clause to grant States authority to create procedural regulations, not to provide States with license to exclude classes of candidates from federal office." U.S. Term Limits, Inc. V.

Thornton, 514 U.S. 779, 833, 115 S.Ct. 1842 (1995).

The voter interests at stake are basic associational rights secured against state action by the First and Fourteenth Amendments, and any restriction on ballot access by candidates necessarily burdens the rights of their supporters to some extent. This right to associate for political purposes is meaningless if the political party with which an individual wants to associate with can be excluded from the electoral process. A presumption exists that any loss in First Amendment rights constitutes irreparable le harm. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976).

## D. GEORGIA'S RESTRICTIVE BALLOT ACCESS

The decision of the Executive Committee of the Democratic Party was arbitrary and capricious and their delegate selection plan was unconstitutionally vague depriving Plaintiffs of due process and that plan was implemented in a manner which deprived the Plaintiffs of due process; and that plan was implemented in a manner that deprived the Plaintiffs of due process.

The decision of the Executive Committee of the Democratic Party of Georgia's not to place Plaintiff Roque "Rocky" De La Fuente on its presidential primary ballot acts as a de facto deprivation of access to the General Presidential election process because 47 states have enacted what are known as "Sore Loser Laws." These laws prevent a losing candidate in a primary election from subsequently filing to run as a listed candidate in the general election as the nominee of another party or as an independent candidate. Plaintiff Roque "Rocky" De La Fuente has already been accepted on the ballot in twenty-five states and territories, he can longer run an effective Independent candidate

campaign.  By denying Plaintiff access to its Presidential Primary, the Georgia Democratic Party has effectively precluded any resident of Georgia from voting for him altogether.

"We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party to which is required to follow these legislative directions an agency of the state in s far as it determines the participants in a primary election.  The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party." Smith. Allwright, 321 U.S. 649, 665, 64 S.Ct. 757 (1944).

"Under our reasoning in Duke v. Smith, Duke also has a procedural due process right to have his petition to be placed on the ballot to be free from the committee's 'unfettered discretion' in rendering a decision."  Duke v. Cleland, 87 F.3d 1226, 1232 (11th Cir.1996).


## E. NATIONAL ORIGIN AND ETHNICITY

In spite of Georgia's large Hispanic population, 9.3% according to the U.S. Census Bureau, by denying to place Plaintiff's name on the Georgia democratic ballot, the Democratic Party is denying Hispanic voters in Georgia the opportunity to vote for an Hispanic candidate.

The Georgia Democratic Party's charter states that the party "shall afford all persons full, timely, and equal opportunities to participate without prejudice on the basis of gender, race, age, color, creed, national origin, religion, economic status, sexual orientation, ethnic identity, or physical disability."Article I, Section 2.2.

While the Defendant Executive Committee of the Democratic Party of

Georgia is a private organization, and may, speaking through their rules, choose to define their associational rights by limiting who can participate in any process leading to the selection of their delegates to the National Convention, they may not refuse to allow ballot access to a state run presidential primary election arbitrarily, where such refusal results in discrimination against a candidate based on racial and national origin.

In striking down the "white primary" over 70 years ago the U.S. Supreme Court held:

> It may now be taken as a postulate that the right to vote in such a primary for the nomination of candidates without discrimination by the State, like the right to vote in a general election is a right secured by the Constitution. By the terms of the Fifteenth Amendment that right may not be abridged by any state on account of race. Under our Constitution the great privilege of the ballot may not be denied a man by the State because of his color.

Smith v. Allwright, 321 U.S. 649, 662, 64 S.Ct. 757 (1944)

> The United States is a constitutional democracy. Its organic law grants to all citizens a right to participate in the choice of elected officials without restriction by any state because of race. This grant to the people of the opportunity for choice is not to be nullified by a state through casting its electoral process in a form which permits a private organization to practice racial discrimination in the election. Constitutional rights wold be of little value if they could thus be indirectly.

Id. 321 U.S. at 664.


## CONCLUSION

Thus, Georgia's statutory scheme as implemented by the Democratic party to keep Plaintiff Roque "Rocky" De La Fuente off the presidential ballot is unduly burdensome, infringed upon constitutional rights, lacks a compelling state interest,

and, is therefore, unconstitutional.

WHEREFORE, Petitioners request this Court to enter an order granting the Plaintiffs' Motion for  Preliminary and Permanent Injunction directing ballot access.

*S/J.M. Raffauf*
J.M. Raffauf
Ga Bar # 591762
Attorney for Plaintiffs
1575 Oakwood Drive
Atlanta GA 30075
404-452-6390
Raffaufmike@gmail.com

*/S/ Jerry Wilson*
Ga. Bar # 768610
Attorney for Plaintiffs
P.O. Box 971
Redan Ga. 30074
404-431-6262
Lawoffice1998@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this Plaintiffs' Memorandum In Support of Motion For Summary Judgment, via CM/ECF system, which will send notification of such filing to the following, and Plaintiff sent an additional copy by U.S. Mail:

Sam Olens, Attorney General of GA
132 State Judicial Bldg.
40 Capitol Square
Atlanta GA 30334

This the 29th day of January, 2016.

                                    S/ J.M. RAFFAUF
                                    J.M. Raffauf

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**ROQUE "ROCKY" DE LA FUENTE,**
**BECKY HERDBERG,  JOSE E. HELENA,**
**and JOSE GILBERTO PEREZ,**
     Plaintiffs

v.                         C.A NO. <u>1:16-CV-00256-RWS</u>

**BRIAN KEMP,**
**GEORGIA SECRETARY OF STATE**; and
**THE DEMOCRATIC PARTY OF GEORGIA,**
     Defendants

## ORDER GRANTING PRELIMINARY AND PERMANENT  INJUNCTION

Plaintiffs have moved this Motion For a Preliminary and Permanent Injunction pursuant to Rule 65, F.R.C.P.   The Plaintiffs seek a determination that certain provisions of the Georgia Election Code, allowing the political parties to determine ballot access to the presidential ballot in Georgia, are unduly burdensome, infringe upon constitutional rights, lack a compelling interest, and are, therefore, unconstitutional.

This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and for violation of the "Elections" Clause of Article I, Section 4 of the United States Constitution challenging the constitutionality of OCGA §§ 21-2-190, 21-2-193 and 21-2-199 as applied by the Democratic Party of Georgia to deny the name of Roque "Rocky" De La Fuente to appear on the March 1, 2016 Presidential Preference Primary.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367 and 2201.

The Court finds that Plaintiff Roque "Rocky" De La Fuente is a candidate for President of the United States, a registered democratic voter, an Hispanic, and has selected the Democratic Party as the political party with whom he chooses to seek the nomination for President by registering with the Federal Election Commission as a presidential candidate of the Democratic Party as of October 1, 2015.  Plaintiff Roque "Rocky" De a Fuente is a well known business owner and a resident of San Diego, California, who meets the presidential qualifications prescribed in Article 2, Section 1 of the United States Constitution in that he is a natural born citizen of the United States, has attained the age of 35, and has been for 40 years a resident within the United States.

Plaintiff Roque "Rocky" De La Fuente timely complied with all rules to have his name placed on the ballot. The decision of the Democratic Party's Executive Committee of the Democratic Party in denying to submit Plaintiff's name to the Georgia Secretary of State for inclusion on the Presidential ballot violates due process and was arbitrary and capricious and contrary to the party's own rules and the Georgia statutes as well as the United States Constitution. (Ex. B)  Plaintiff Roque "Rocky" De La Fuente moved for reconsideration but that was denied without explanation by Defendant Party.   In its only written or recorded explanation of its decision, the Defendant Democratic Party's Executive Committee claimed its action was not state action and that the Committee had a "right" to "exclusively determine" which names to put on the ballot; admitting it acted in a totally arbitrary and capricious manner:

The list submitted by the Defendant Democratic Party to the Georgia Secretary of State included Hillary Clinton, Bernie Sanders, Martin O'Malley, Michael Steinberg, and Larry Lessig.

## A. THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION

Four factors must be considered in determining whether a party is entitled to a preliminary injunction: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257 (11th Cir. 2001); Hamilton's Bogarts Inc. V. Michigan, 501 F.3d 644, 649 (6th Cir. 2007).

When state election schemes impose undue and severe burdens on the Plaintiffs' constitutional rights, the schemes must be struck down unless they serve narrowly tailored compelling state interests. Swanson v. Worley, 490 F.3d 894 (11th Cir.2007).  Thus, in order to regulate the election process and ballot access requirements, state must show that the restrictions are narrowly tailored to serve compelling state interests. Green v. Mortham, 155 F.3d 1332, 1335 (11th Cir. 1998).

**1. The Court finds that the Plaintiffs have established the likelihood of success on the merits.**  Allowing the Democrats complete discretion has led to the re-establishment of the banned white primary, Smith v. Allwright, 321 U.S. 649, 664, 64 S.Ct. 757, 765, 88 L.Ed. 987 (1944),  and thus falls outside the boundaries drawn by the U.S. Supreme Court for presidential elections.  The Court must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Plaintiffs are seeking to vindicate.  Swanson v. Worley, 490 F.3d 894, 902 (11th Cir. 2007).  Then it must

identify and evaluate the precise interests set by the state as justification for the burden imposed.  The court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the Plaintiffs' rights.

Ballot access restrictions implicate the constitutional rights of voters to cast their votes effectively.  Williams v. Rhodes, 393 U.S. 23, 30 (1968).  In fact. "No State can pass a law regulating elections that violates the Fourteenth Amendment's command that ... [denies] to any person the equal protection of the laws." Id. Furthermore, "[no right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." Id. Citation omitted.  "Other rights, even the most basic, are illusory if the right to vote is undermined." Id.

Here, Defendants cannot show any compelling interests which would justify excluding Plaintiff from the ballot.  Georgia's current statutory scheme compromises political stability and voter's essential rights to vote for their candidates.  Therefore, Plaintiffs are likely to succeed on the merits because Georgia's statutory scheme is unduly burdensome, infringes upon constitutional rights, lack a compelling state interest, and are, therefore, unconstitutional.


**2. The Court finds that there is irreparable harm to the Plaintiffs.**  As argued herein, the right to participate in elections is one of the most fundamental rights in our democracy, and there is no substitute for denial of that right to a person or party.  The loss of an opportunity to participate in an election represents irreparable harm that cannot be compensated by money damages.  If the law stands, Plaintiffs will have no other remedy. "No damages or other compensation

can compensate for a missed election." Duke v. Connell, 790 F. Supp. 50, 52 (D.C. R.I. 1992).  See also Libertarian party of Ohio v. Brunner, 567 F. Supp. 1006, 1014 (S.D. Ohio 2008), concluding that "denial of access to the ballot" constitutes irreparable harm.

Georgia's statutory scheme prevents Plaintiff De La Fuente from running not only in the primary but also in the general election.  Since this Plaintiff has already been accepted on the ballot in twenty-five states and territories, he is precluded from running as an independent candidate in those states because of"sore loser" laws.  These laws prevent a losing candidate in a primary election from subsequently filing to run as a listed candidate in the general election as the nominee of another party or as an independent candidate.

**3. The Court finds that there is no substantial harm to others.**  Plaintiffs participation in the election cannot harm anyone.  The relief sought will only guarantee that voters will have more choices and an Hispanic candidate and his voters can participate in the democratic process.

**4. The Court finds that the public interest will be served.** The relief sought herein will further the public interest by providing voters with choices. It is clear that the voting public is not happy with the stranglehold that the Republican and Democratic parties have on the electoral process and the legislative process. Inclusion of Plaintiff's name on the primary ballot will promote participation in the primary, encourage debate, and illuminate bias and discrimination against Hispanic candidates.


## B. THE CONSTITUTIONAL RIGHT TO BALLOT ACCESS

The right to vote, the right to associate for political purposes and the right to

be a political candidate are fundamental constitutional rights protected by the First and Fourteenth Amendments.  Burdick v. Takushi, 504 U.S. 428, 433, 112 S.Ct. 2059, 2063 (1992); Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214, 224, `09 S.Ct. 1013 (1989); Tashjian v. Republican Party of Conn., 479 U.S. 208, 214, 107 S.Ct. 544 (1986); Anderson v. Celebrezze, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569 (1983)

First Amendment rights are implicated whenever a state action imposes a barrier to the free exercise of the voting franchise or any First Amendment Right. That barrier does not have to wholly prevent voters from exercising a First Amendment Right to be found unconstitutional.  And "that right is burdened when the state makes it more difficult for these voters to cast ballots."  Molinari v. Bloomberg, 564 F.3d 587, 604 (2nd Cir. 2009)  The First Amendment creates an open marketplace where ideas, most especially political ideas, may compete without government interference."  N.Y. State Bd. Of Elections v. Lopez Torres, 552 U.S. 196, 208, 128 S.Ct. 791 (2008).  The First Amendment "has its fullest and most urgent application" to speech uttered during a campaign for political office.  Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 223, 109 S.Ct. 1013 (1989).  Thus any limits on speech in the context of a political campaign is subject to strict scrutiny. Citizens United v. FEC, 558 U.S. 50, 130 S.Ct. 876, 882 (2010).

In ballot access cases, the first amendment right of free association is found in three associational relationships: (1) The right of voters to associate through the organization of a political party.  (2) The rights of an organized political party to control the determination of those candidates with which it associates.  (3) The rights of an organized political party to control its nominations by controlling who

may participate in such nominations.  Democratic Party of the United States v. Wisconsin ex rel La Follette, 450 U.S. 107, 101 S.Ct. 1010 (1981).

The implications of the Equal Protection Clause on the constitutionality of ballot access statutes generally focuses on (a) the disparate treatment of major and minor parties and (b) the disparate treatment of the candidates of parties and independent candidates. See Anderson v. Celebreze, 460 U.S. 768, 794, 103 S.Ct. 1564 (1983):

A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment.  It discriminates against those candidates and - of particular importance - against those voters whose political preferences lie outside the existing political parties.  By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas.

## C. JUDICIAL REVIEW OF ELECTION LAWS

Political parties exist to advocate positions and philosophies and serve as a vehicle where like-minded people can assemble.  Under our representative and elective system of government, "a basic function of a political party is to select candidates for public office to be offered to voters at general elections." Kusper v. Pontikes, 414 U.S. 51, 58, 94 S.Ct. 303, 308 (1973).  "The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied a equal opportunity to win votes." Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5 (1968).  Thus, "only a compelling state

interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." Id. [Citation omitted.]

Ballot access limiting statutes must be considered in the aggregate: "The concept of totality is applicable... in the sense that a number of facially valid provisions of elections laws may operate in tandem to produce impermissible barriers to constitutional rights." Storer v. Brown, 415 U.S. 724,737 94 S.Ct. 1274, 1282 (1974).  "A court should examine the cumulative burdens imposed by the overall scheme of electoral regulations upon the rights of voters and parties to associate through primary elections." Clingman v. Beaver, 544 U.S. 581, 608, 125 S.Ct. 2029 (2005) (O'Connor concurring).

The general analytical framework for evaluating constitutional challenges to state election laws was set out in Anderson v. Celebreze, 460 U.S. at 789, and imposes the following requirements:

> [The Court] must **first** consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It **then** must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule.  In passing judgment, the Court must not only determine the **legitimacy** and **strength** of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights.

Strict scrutiny applies whenever fundamental rights are implicated. Dunn v. Blumstein, 405 U.S. 330, 336, 92 S.Ct. 995 (1972).  Under the strict scrutiny standard of review, a statue can be upheld only if it is designed to achieve its objective in the least restrictive means. Illinois State Br. Of Elections v. Socialist Worker's Party, 440 U.S. 173, 185, 99 S. Ct. 983 (1979). This strict scrutiny "requires the government to prove that the restriction furthers a compelling

Page -8-

interest and is narrowly tailored to achieve that interest." <u>Citizens United</u>, 130
S.Ct. At 882.  And, "the strict scrutiny test is applicable under the Equal Protection
Clause to classifications affecting the exercise of fundamental rights."  <u>Fulani v.
Krivanek</u>, 973 F.2d 1539, 1542 (11th Cir. 1992).

In testing the legitimacy of a State's asserted interest, a court is not required
to accept at face value any justification the state may give for its practices.  Rather,
the court must determine the offered justification is real, and not merely a
pretextual justification for its practices.  <u>Reform Party of Allegheny County v.
Allegheny County Dep't of Elections</u>, 174 F.3d 305, 315 (3rd Cir. 1999);
<u>Libertarian Party of Ohio v. Blackwell</u>, 462 F.3d 579 (6th Cir. 2006).

Even an otherwise legitimate state concern cannot be accepted without
evidence that the problem the state is asserting is real. <u>Washington State Grange v.
Washington State Republican Party</u>, 552 U.S. 442, 128 S.Ct. 1184 (2008).
Therefore, it is insufficient for the state to merely assert a defense, it must present
evidence of a real problem that its ballot access limiting statutes seek to address.

In addition to having a legitimate reason for its practice, the state must also
show that its practice actually corrects or mitigates the problem that justifies its
action. <u>Reform Party of Allegheny County v. Allegheny County Dep't of
Elections</u>, 174 F.3d 305, 315 (3rd Cir. 1999).

There are clearly limits on the State's interests when elections to federal
office are involved: "The Framers intended the Elections Clause to grant States
authority to create procedural regulations, not to provide States with license to
exclude classes of candidates from federal office." <u>U.S. Term Limits, Inc. V.
Thornton</u>, 514 U.S. 779, 833, 115 S.Ct. 1842 (1995).

The voter interests at stake are basic associational rights secured against

state action by the First and Fourteenth Amendments, and any restriction on ballot access by candidates necessarily burdens the rights of their supporters to some extent.  This right to associate for political purposes is meaningless if the political party with which an individual wants to associate with can be excluded from the electoral process.  A presumption exists that any loss in First Amendment rights constitutes irreparable le harm. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976).

## D. GEORGIA'S RESTRICTIVE BALLOT ACCESS

The Court finds that the decision of the Executive Committee of the Democratic Party was arbitrary and capricious and their delegate selection plan was unconstitutionally vague depriving Plaintiffs of due process and that plan was implemented in a manner which deprived the Plaintiffs of due process; and that plan was implemented in a manner that deprived the Plaintiffs of due process.

The decision of the Executive Committee of the Democratic Party of Georgia's not to place Plaintiff Roque "Rocky" De La Fuente on its presidential primary ballot acts as a de facto deprivation of access to the General Presidential election process because 47 states have enacted what are known as "Sore Loser Laws."  These laws prevent a losing candidate in a primary election from subsequently filing to run as a listed candidate in the general election as the nominee of another party or as an independent candidate.   Plaintiff Roque "Rocky" De La Fuente has already been accepted on the ballot in twenty-five states and territories, he can longer run an effective Independent candidate campaign.  By denying Plaintiff access to its Presidential Primary, the Georgia Democratic Party has effectively precluded any resident of Georgia from voting

for him altogether.

"We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party to which is required to follow these legislative directions an agency of the state in s far as it determines the participants in a primary election.  The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party." Smith. Allwright, 321 U.S. 649, 665, 64 S.Ct. 757 (1944).

"Under our reasoning in Duke v. Smith, Duke also has a procedural due process right to have his petition to be placed on the ballot to be free from the committee's 'unfettered discretion' in rendering a decision."  Duke v. Cleland, 87 F.3d 1226, 1232 (11th Cir.1996).

## E. NATIONAL ORIGIN AND ETHNICITY

In spite of Georgia's large Hispanic population, 9.3% according to the U.S. Census Bureau, by denying to place Plaintiff's name on the Georgia democratic ballot, the Democratic Party is denying Hispanic voters in Georgia the opportunity to vote for an Hispanic candidate.

The Georgia Democratic Party's charter states that the party "shall afford all persons full, timely, and equal opportunities to participate without prejudice on the basis of gender, race, age, color, creed, national origin, religion, economic status, sexual orientation, ethnic identity, or physical disability."Article I, Section 2.2.

While the Defendant Executive Committee of the Democratic Party of Georgia is a private organization, and may, speaking through their rules, choose to define their associational rights by limiting who can participate in any process

leading to the selection of their delegates to the National Convention, they may not refuse to allow ballot access to a state run presidential primary election arbitrarily, where such refusal results in discrimination against a candidate based on racial and national origin.

In striking down the "white primary" over 70 years ago the U.S. Supreme Court held:

> It may now be taken as a postulate that the right to vote in such a primary for the nomination of candidates without discrimination by the State, like the right to vote in a general election is a right secured by the Constitution. By the terms of the Fifteenth Amendment that right may not be abridged by any state on account of race.  Under our Constitution the great privilege of the ballot may not be denied a man by the State because of his color.

Smith v. Allwright, 321 U.S. 649, 662, 64 S.Ct. 757 (1944)

> The United States is a constitutional democracy.  Its organic law grants to all citizens a right to participate in the choice of elected officials without restriction by any state because of race.  This grant to the people of the opportunity for choice is not to be nullified by a state through casting its electoral process in a form which permits a private organization to practice racial discrimination in the election.  Constitutional rights wold be of little value if they could thus be indirectly.

Id. 321 U.S. at 664.


## CONCLUSION

The Court finds that Georgia's statutory scheme as implemented by the Democratic party to keep Plaintiff Roque "Rocky" De La Fuente off the presidential ballot is unduly burdensome, infringed upon constitutional rights, lacks a compelling state interest, and, is therefore, unconstitutional.

THEREFORE, Petitioners request this Court to enter an order granting the Plaintiffs' Motion for  Preliminary and Permanent Injunction directing that the Democratic Party of Georgia submit Roque "Rocky" De La Fuente's name to the Secretary of State to be included on the March 1, 2016 presidential primary ballot is hereby granted.

So ORDERED this the _____ day of January, 2016.

_____
Judge RICHARD W. STORY
United States District Court