IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROQUE "ROCKY" DE LA FUENTE,　　*
BECKY HERDBERG, JOSE E.　　　　 *
HELENA, and JOSE GILBERTO　　　 *　　 CIVIL ACTION FILE
PEREZ,　　　　　　　　　　　　　 *　　 NO. 1:16-CV-0256-RWS
　　　　　　　　　　　　　　　　　 *
　　Plaintiffs,　　　　　　　　　　 *
　　　　　　　　　　　　　　　　　 *
　　v.　　　　　　　　　　　　　　 *
　　　　　　　　　　　　　　　　　 *
BRIAN KEMP, Georgia Secretary of　 *
State, and THE DEMOCRATIC　　　　 *
PARTY OF GEORGIA　　　　　　　　 *
　　　　　　　　　　　　　　　　　 *
　　Defendants.　　　　　　　　　　 *

DEFENDANT BRIAN KEMP'S BRIEF IN OPPOSITION
TO PLAINTIFFS'MOTION FOR A PRELIMINARY
INUNCTION AND PERMANENT INJUNCTION

COMES NOW BRIAN KEMP, Georgia Secretary of State ("Kemp"), by and

through his attorney of record, the Attorney General of the State of Georgia, and files

this Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction and

Permanent Injunction. Doc. 2.

Plaintiffs filed this suit on January 28, 2016, claiming that the Democratic

Party of Georgia's decision not to include Roque De La Fuente as a candidate in the

Presidential Preference Primary Democratic ballot violates their First and Fourteenth

Amendment rights.  Plaintiffs seek an Order directing Secretary Kemp "to include the

1

name of Plaintiff [De La Fuente] on the March 1, 2016 Presidential Preference Ballot."  Doc. 1 p. 10 ¶ C. One day after filing their complaint, Plaintiffs filed this motion for preliminary injunction.  Doc. 2.  Plaintiffs mailed a copy of their motion to both Secretary Kemp and Attorney General Olens.  Plaintiffs have not served Secretary Kemp with a complaint and summons.  Plaintiffs' counsel provided notice to Secretary Kemp's counsel of the scheduled hearing after 5:30 pm on February 2, 2016.

**The Statutory Framework**

Plaintiffs challenge a decision of the Democratic Party of Georgia not to include Plaintiff De La Fuente on that party's Presidential Preference Primary ballot. In doing so, Plaintiffs challenge the constitutionality of two statutes.  First, they challenge O.C.G.A. § 21-2-193 , which  requires that not later than 60 days preceding the date of the Presidential Preference Primary, each party shall submit to the Secretary of State a list of the names of candidates who shall appear on that party's Presidential Preference Primary ballot.  Thus, the Democratic Party of Georgia was required to submit its list of candidates to the Secretary of State by no later than December 1, 2015. *Id.  See also* Doc. 1-1 at 3.

Second, they challenge O.C.G.A. § 21-2-199, which allows the parties to elect committee members at the presidential preference primary.  The statute provides:

2

**Election of political party committee members or officers at primary.**

The presidential preference primary may be considered as a general primary for any political party wishing to elect committee members or officers therein.  Such party shall prescribe by state party charter, bylaws, or rules and regulations regarding qualifying of candidates and the fixing and publishing of qualifying fees, if any.

O.C.G.A. § 21-2-199.[1]  Plaintiffs do not clearly state what they find unconstitutional about this statute.

## Statement of Facts

Plaintiffs, a prospective presidential candidate and three voters, allege that on October 23, 2015, Plaintiff De La Fuente wrote the Executive Director of the Democratic Party of Georgia (DPG) requesting that he be placed on the Democratic ballot for Georgia's Presidential Preference Primary.  Doc. 1-1 at 1.  On October 29, 2015, the Executive Committee of the Democratic Party of Georgia met and selected the candidates who will appear on the 2016 Democratic Presidential Preference Primary ballot in Georgia.  Doc. 1-1 at 2. Plaintiff De La Fuente's name was not included among the candidates who will appear on the Democratic ballot.  *Id*. Plaintiff De La Fuente asked the Democratic Party of Georgia (DPG) to reconsider its decision not to include him on the ballot.  *See* Doc. 1-1 at 4.  On November 18, 2015,

---

[1] Plaintiffs' complaint quotes only the last sentence of the statute, and they appear to assert that this statute somehow pertains to the qualification of presidential candidates.  Doc. 1 ¶ 10 and p. 10 ¶ D.  It clearly does not.

counsel for the Democratic Party of Georgia informed Plaintiff De La Fuente's representative of the DPG's decision not to include De La Fuente on the ballot.  *Id.* Plaintiffs then waited ten (10) weeks, until January 28, 2016, to file their complaint and seek a preliminary injunction.

Voting for the 2016 Presidential Preference Primary by absentee ballot began on January 16, 2016.  The Secretary of State is required by federal law to transmit all absent ballots to military and civilian overseas voters ("UOCAVA voters") *at least 45 days prior* to the date of any election for federal office.  *United States v. Georgia*, 778 F.3d 1202, 1203 (11th Cir. 2015); *United States v. Alabama*, 778 F.3d 926, 934-35 (11th Cir. 2015).  *See also* 52 U.S.C. § 20302.[2]  Thus, the Secretary of State was legally mandated to transmit all UOCAVA ballots by no later than Saturday, January 16, 2015.[3]  In addition, advance voting for the March 1, 2016 Presidential Preference Primary begins on Monday, February 8, 2016.  Kemp Exh. 1 ¶ 7.

As the declaration of Michael Barnes, Director of the Center for Election Systems at Kennesaw State University, makes clear, ballots to be used in the Presidential Preference Primary were required to be transmitted to all Georgia

---

[2] Formerly 42 U.S.C. § 1973ff(a)(8)(A).
[3] Georgia law provides that absentee ballots may be transmitted to UOCAVA voters up to 49 days prior to the date of the election.  O.C.G.A. § 21-2-384(a)(2).

counties 50 days prior to the March 1, 2016 date.  Kemp Exh. 2 ¶ 7.  Each Georgia county has its own ballot.  *Id.* ¶¶ 4, 9.

## ARGUMENT AND CITATION OF AUTHORITY

### I.   Plaintiffs Have Not Met Their Burden of Showing That They are Entitled to a Preliminary Injunction.

A preliminary injunction in advance of trial is an extraordinary measure. *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  In order to prevail on a motion for preliminary injunction, the movant must show: 1) a substantial likelihood of prevailing on the merits; 2) that the plaintiff will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and 4) that if issued, the injunction would not be adverse to the public interest."  *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988); *Levi Strauss and Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995).  A preliminary injunction is a drastic remedy "which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (11th Cir. 1974).

Plaintiffs have the burden of establishing their entitlement to a preliminary injunction.  *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009).  Plaintiffs' motion for a preliminary injunction should

be denied because they have not shown any of the elements necessary to support their request for this extraordinary remedy.

**A.      Plaintiffs Have Not Shown a Substantial Likelihood of Success on the Merits.**

The most important factor in deciding whether to grant or withhold a preliminary injunction is the consideration of a plaintiff's likelihood of succeeding on the merits, and a failure to meet this initial hurdle relieves a court from considering the remaining factors. *Church v. City of Huntsville*, 30 F.3d 1332, 1341-45 (11th Cir. 1994). Here, Plaintiffs are not likely to succeed on the merits of their claims.

**1.   Plaintiffs' Request for a Preliminary Injunction is Barred by the Doctrine of Laches.**

Laches applies to a request for equitable relief when (1) there was a delay in asserting the claim; (2) the delay was not excusable; and (3) the delay caused the non-moving party undue prejudice. *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005); *Kason Indus. v. Component Hardware Group*, 120 F.3d 1199, 1203 (11th 1997); *see also Costello v. United States*, 365 U.S. 265, 282 (1961).

Here, as set out above, Plaintiff De La Fuente knew on or before November 5, 2016 that the DPG had chosen not to include him on the Democratic ballot. He knew by November 18, 2015, that the DPG had denied his request for reconsideration. Plaintiffs then waited *ten (10) weeks* after De La Fuente was denied reconsideration

by the DPG to file their complaint and seek injunctive relief.  Plaintiffs waited until *after* the State of Georgia printed ballots, county election officials mailed out absentee ballots, electors *voted* by absentee, election officials tested DRE machines, and just days before advance voting is due to begin throughout the State of Georgia, to file their lawsuit.  In other words, Plaintiffs waited until *after* the election began to ask this Court to put Mr. De La Fuente on the ballot.  Plaintiffs' delay is not excusable.

As outlined in the affidavits of Chris Harvey, Director of Elections for the State of Georgia, and Michael Barnes, Director of the Center for Election Systems at Kennesaw State University, ballots for the Presidential Preference Primary have been printed for all 159 Georgia counties.  Absentee ballots have been mailed to voters and absentee ballots have been cast.

In addition, county election officials are required to complete their testing of DRE machines by Thursday, February 4, 2016.  Kemp Exh. 2 ¶ 11; O.C.G.A. § 21-2-379.6(c).  Advance voting is scheduled to begin throughout the State of Georgia on Monday, February 8, 2016. Kemp Exh. 1 ¶ 7.  A preliminary injunction would unduly prejudice Defendants.  The request for injunctive relief should therefore be barred by the doctrine of laches.

## 2. O.C.G.A. § 21-2-193 Does not Severely Burden Plaintiffs' First and Fourteenth Amendment Rights and is Narrowly Tailored to Serve a Compelling State Interest.

The Supreme Court has held that "[w]hen deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (internal citations and quotation marks omitted). The Court has recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons*, 520 U.S. at 358 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). Here, state law provides that the executive committee of each political party is to identify the candidates that are to appear on that party's presidential preference

primary ballot.   O.C.G.A. § 21-2-193.   As discussed below, the statute does not severely burden any of the Plaintiffs' rights.

Plaintiff De La Fuente, asserts a right to appear as a candidate on the Democratic Party's ballot because he "has selected the Democratic Party as the political party with whom *he* chooses to seek the nomination for President."  Doc. 2 at 1 (emphasis added).  However, De La Fuente "does not have a right to associate with an 'unwilling partner.'"  *Duke v. Massey*, 87 F.3d 1226, 1232, *reh'g en banc denied*, 98 F.3d 1355 (11th Cir. 1996) (quoting *Duke v. Cleland (Duke I)*, 954 F.2d 1526, 1530 (11th Cir. 1992)).  In *Duke*, plaintiffs, a candidate and supporters, sued the Secretary of State and the members of the Republican Party's Executive Committee, alleging that the denial of Duke's request to appear on the Republican Presidential Preference Primary ballot violated plaintiffs' "rights of free speech, right of association, right to equal protection, right to run for office, right to vote, and right of due process guaranteed under the *First and Fourteenth Amendments to the Constitution of the United States*."  *Duke*, 87 F.3d at 1229.  The Eleventh Circuit recognized that the Republican Party had "a right to 'identify the people who constitute the association and to limit the association to those people only.'"  87 F.3d at 1232 (quoting *Duke I*, 954 F.2d at 1530).  While recognizing that Duke had a First and Fourteenth amendment right "to be free from state discrimination . . . and a

procedural due process right to have his petition to be placed on the ballot to be free from a committee's 'unfettered discretion' in rendering a decision . . . those interests [did] not trump the [ ] Party's right to identify its membership . . . nor the state's interests in protecting the [ ] Party's right" to do so.  87 F.3d at 1232 (internal citations omitted).  As a result, the Eleventh Circuit held that Duke's rights had *not* been severely burdened.[4]

Moreover, amendments to former O.C.G.A. § 21-2-193 have completely eliminated the state's control over how the DPG selects is candidates.[5] Unlike the Georgia statute at issue in the Georgia *Duke cases*, here, Plaintiffs' complaint is about a decision made by the DPG, with *no* state involvement.  Under *Duke v. Smith*, 13 F.3d 388, 391 n. 3 (11th Cir. 1994) (Duke's challenge to a Florida statute), the decision by the DPG not to include De La Fuente on their presidential preference primary ballot is not state action. Under Georgia's prior statutory framework, the committee that selected party candidates for the ballot was "a creature of state law and [therefore] its actions [were] attributable to the state."  *Duke II*, 5 F.3d at 1403.

---

[4] Similarly, the Court held that Duke's supporters did *not* have a right to vote for him as a Republican nominee.  87 F.3d 1233.  Duke's supporters were free, as are De La Fuente's supporters here, to vote for him as an independent candidate in a general election.  *Id.*

[5] A copy of the former statute at issue in the Georgia *Duke* cases, is attached hereto as Kemp Exh. 3.  The statute also appears in full at  *Duke v. Cleland* (*Duke II*), 5 F.3d 1399, 1402 (11th Cir. 1993).

That structure is not present here.  Instead, Georgia law now plays no role is selecting a party's ballot candidates, just as the provisions in Fla. Stat. § 103.101(2)(a) addressed in *Duke v. Smith*, 13 F.3d at 391.  Therefore, the only conduct which the Plaintiffs' complaint addresses, the DPG's decision, is *not* state action, and Plaintiffs' claims premised on that conduct, are not actionable under 42 U.S.C. § 1983.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (explaining that only conduct committed by person acting under color of state law is actionable under 42 U.S.C. § 1983).

Despite holding that Duke's rights had not been severely burdened, "to err on the side of caution," the Eleventh Circuit applied strict scrutiny.  87 F.3d at 1233. The Court held that Georgia has a compelling state interest in "protecting political parties' rights to define themselves."[6]  87 F.3d at 1234.  The Court also recognized the State's significant interest in "structuring and regulating elections in order to facilitate order, honesty, and fairness."  *Id.*

The Supreme Court has repeatedly recognized political parties' rights to run their own affairs.  *See New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008) ("A political party has a *First Amendment* right to limit its membership as

---

[6] This holding is hardly remarkable considering the Supreme Court's admonition that "a State, or a court, may not constitutionally substitute its own judgment for that of the Party. A political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution."  *Democratic Party of United States v. Wis.*, 450 U.S. 107, 123-124 (1981).

11

it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform."); *Democratic Party of United States v. Wisconsin*, 450 U.S. 107, 122 (1981) ("This Court has recognized that the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions--thus impairing the party's essential functions--and that political parties may accordingly protect themselves from intrusion by those with adverse political principles.") (citations omitted); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986) (state prohibited from limiting voters in party primaries to those registered with the party); *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) (party successfully challenged a blanket primary system); *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989) (party successfully challenged statute prohibiting political party endorsement of candidates in primaries).

The Democratic Party of Georgia has a right to decide which candidates best represent the interests of the Party and to forward only those candidates to the Secretary of State for placement on the ballot. Both the DPG and the State have a compelling interest in preventing a crowded ballot and voter confusion. *Bullock v. Carter*, 405 U.S. 134, 144-45 (1972) ("[A] State has a legitimate interest in regulating the number of candidates on the ballot."). Over two hundred (200) candidates, with a Democratic Party affiliation, have registered with the F.E.C. as candidates for the

office of President of the United States. *See*

http://www.fec.gov/press/resources/2016presidential_form2pty.shtml.  Requiring the

Democratic Party of Georgia to provide all of these candidates a place on the ballot

would simply add to voter confusion.  "When insubstantial candidates are added to a

ballot, the rights of voters are compromised, not enhanced." *De La Fuente v.*

*Democratic Party of Florida*, slip op. CA No. 4:16cv26-RH/CAS (N.D. Fla. 2016)[7]

(citing *Lubin v. Panish*, 415 U.S. 709, 715-716 (1974)).

### 3.  Plaintiffs' Have not Sufficiently Alleged, Much Less Provided Evidence of, Invidious Racial Discrimination.

Plaintiffs assert an equal protection claim for "de facto discrimination  . . . on

the basis of national origin."  Doc. 1 ¶ 32.  Plaintiffs appear to be arguing that their

claim is premised, at least in part, on the fact that Georgia has a Hispanic population

of roughly 9.3% and none of the candidates that appear on the Georgia ballot as

Democratic Party candidates are Hispanic.  *See* Doc. 1 ¶ 35.  These allegations are

insufficient to allege, much less prove, an equal protection claim.

An equal protection claim requires a showing that a plaintiff has been the

victim of *intentional* discrimination.  *Batson v. Kentucky*, 476 U.S. 79 (1986)

(emphasis added).  The requisite discriminatory purpose must be "more than intent as

volition or intent as awareness of consequences.  It implies that the decisionmaker . . .

---

[7] A copy of this slip op. is attached hereto as Kemp Exh. 4.

selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citations omitted).  Plaintiffs do not even allege, much less provide evidence of, either the DPG's or the State's invidious discriminatory intent.[8]  It is insufficient for Plaintiffs to assert that the DPG's decision has an adverse racial impact on them, even if that were true.

### 4.  Plaintiffs Cannot Prevail on Their Title VI Claim.

Title VI provides that:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

First, like the equal protection clause, Title VI prohibits only intentional racial discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  *See also*, *United States v. Fordice*, 505 U.S. 717, 732 n. 7 (1992).

---

[8] The absence of racial intent is clear from review of De La Fuente's request to the DPG for reconsideration.  *See* DPG Def. Exh. 1 (Nov. 5, 2015 request for reconsideration asserting that "[a]pparently, name recognition trumps substantive policy" for DPG candidate choices.) DPG Def. Exh. 2 (Nov. 13, 2015 request for reconsideration asserting that "[t]he Executive Committee based its decision on the fact that it believed Mr. De La Fuente not to be a 'widely recognized, legitimate candidate,' we respectfully disagree.").  Plaintiffs may disagree with the DPG's decision, but they recognize the decision was not racially based.

Second, the United States Supreme Court has repeatedly held that Title VI invokes Congress's power under the Spending Clause and should be treated as a quasi-contractual provision under which those who voluntarily accept Federal funds must spend those funds in a non-discriminatory manner. *See, e.g. Barnes v. Gorman*, 536 U.S. 181, 186–87 (2002); *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 599 (1983) (citing 110 Cong. Rec. 6546 (1964) (Sen. Humphrey)). "Title VI rests on the principle that 'taxpayers' money, which is collected without discrimination, shall be spent without discrimination.'" *Guardians*, 463 U.S. at 599 (quoting 110 Cong. Rec. 7064 (Sen. Ribicoff)). Thus, enforcement actions under Title VI are cognizable only if the allegedly discriminatory action is being undertaken pursuant to the acceptance and spending of Federal funds. 42 U.S.C. § 2000d.  Here, Plaintiff has not alleged, much less provided evidence to show, that he was subject to racial discrimination in "any program or activity receiving Federal financial assistance." *Id.*

### 5.  Plaintiff Does not Have a Claim Pursuant to the Elections Clause.

The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const., Art. I, § 4, cl. 1.  As the text of the constitution provides, the Elections Clause pertains only to *congressional elections*.  *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S. Ct. 2247, 2268 n. 2 (2013) (J. Thomas, dissenting) (explaining

that in contrast "the state legislature's power to select the manner for appointing

[presidential] electors is plenary.") (quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000)).

"The Elections Clause has two functions. Upon the States it imposes the duty ('shall

be prescribed') to prescribe the time, place, and manner of electing Representatives

and Senators; upon Congress it confers the power to alter those regulations or

supplant them altogether." *Arizona*, 133 S. Ct. at 2253 (citing *U.S. Term Limits, Inc.*

*v. Thornton*, 514 U.S. 779, 804-805 (1995)).  Here, Plaintiffs' challenge is to the

regulation of the Presidential Preference Primary.  The Elections Clause has no

application.

### B.      Plaintiff Cannot Show That he Will Suffer Irreparable Harm Absent the Granting of a Preliminary Injunction

Plaintiff has not shown that he will suffer irreparable harm if a preliminary

injunction is not granted.   "A showing of irreparable harm is the '*sine qua non*' of

injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations

omitted).  When a plaintiff has not shown a likelihood of success on the merits,

claims for irreparable injury based on an alleged constitutional injury have no merit.

*Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir.

2002).  Here, Plaintiffs have failed to show irreparable harm.  De La Fuente can

campaign as an independent candidate and his supporters can vote for him as an

independent candidate.  Neither De La Fuente nor his supporters have a legal right to

be able to vote for him as a Democratic Party candidate.  To require such would violate the rights of free association of the Democratic Party.

### C.  The Damage to the Defendants Outweighs Any Alleged Injury to Plaintiff.

On a motion for preliminary injunction, the plaintiff bears the burden of showing that the perceived injury outweighs the damages that the preliminary injunction might cause to the defendants.  *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).  "Only in rare instances is the issuance of a mandatory preliminary injunction proper."  *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979).  As the Supreme Court has cautioned,

> Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law. . . . When the frame of reference moves from a unitary court system . . . to a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief.
>
> * * *
>
> [T]hese principles have applicability where injunctive relief is sought, not against the judicial branch of state government, but against those in charge of an executive branch of an agency of state or local governments.

*Rizzo v. Goode*, 423 U.S. 362, 378-79, 80 (1976) (citations omitted).

17

Here, the harm to Defendants is extraordinary.  An injunction would interfere with an election that has already begun.  *See* Kemp Exhs. 1 and 2.

### D.   The Preliminary Injunction Will Not Serve the Public Interest

A plaintiff also bears the burden of showing that the preliminary injunction would serve the public interest. *Baker*, 856 F.2d at 169.  Here, the public interest weighs heavily *against* the issuance of an injunction.   The 2016 Presidential Preference Primary has already begun, and absentee voters have cast ballots.  To require the state to add Plaintiff De La Fuente to the ballot would interfere with the state's compelling interest in allowing political parties to choose their own candidates, and would interfere with an ongoing election.

### III.   <u>CONCLUSION</u>

As Plaintiffs cannot satisfy the standards for an injunction, their request for a preliminary injunction should be denied.

Respectfully submitted,

SAMUEL S. OLENS        551540
Attorney General

DENNIS R. DUNN        234098
Deputy Attorney General

RUSSELL D. WILLARD   760280
Senior Assistant Attorney General
rwillard@law.ga.gov

/s/Julia B. Anderson
JULIA B. ANDERSON        017560
Senior Assistant Attorney General
janderson@law.ga.gov

/s/Cristina Correia
CRISTINA CORREIA        188620
Assistant Attorney General
ccorreia@law.ga.gov

/s/Josiah Heidt
JOSIAH HEIDT        104183
Assistant Attorney General
jheidt@law.ga.gov

Please address all
Communication to:
CRISTINA CORREIA
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
(404) 656-7063

19

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the forgoing Defendant's Response to Plaintiffs' Motion for Preliminary Injunction were prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

**Certificate of Service**

I hereby certify that on February 4, 2016, I electronically filed Defendant Brian Kemp's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

J. M. Raffauf
Office of J.M. Raffauf
248 Washington Ave.
Marietta, GA  30060

Jerry Wilson


I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  NONE


This 4th day of February, 2016.


/s/Cristina Correia_____
Cristina Correia            188620
Assistant Attorney General