UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROQUE "ROCKY" DE LA FUENTE,
BECKY HERDBERG, JOSE E. HELENA, and
JOSE GILBERTO PEREZ

    Plaintiffs

v.                                                   C.A. 1:16-CV – 00256-RWS

BRIAN KEMP, GEORGIA SECRETARY
OF STATE; and THE DEMOCRATIC
PARTY OF GEORGIA

    Defendants

**DEMOCRATIC PARTY OF GEORGIA's BRIEF IN OPPOSITION
TO MOTION FOR PRELIMINARY
INJUNCTION AND PERMANENT INJUNCTION**

Plaintiffs seek an injunction "directing ballot access" (Pl. brief, p.1) for the Presidential Preference Primary to be held on March 1, 2016. Mr. De La Fuente notified the Democratic Party of Georgia that he wished to be considered as a potential candidate for President of the United States on the Presidential Preference Primary ballot. Pursuant to O.C.G.A. § 21-2-193, the executive committee of the Democratic Party of Georgia submitted to the Secretary of State a list names to be placed on the ballot. Georgia law authorizes the state executive committee of each political party to "determine the method and procedures by which delegates and delegate

1

alternates to the national nominating conventions are to be selected…." O.C.G.A. § 21-2-195. Mr. De La Fuente's request for inclusion was considered, but ultimately he was not selected as a candidate.

The Georgia Democratic Party apportions delegates to the National Convention based upon the relative performance of different people named on the ballot. No one is elected to any office, nor is anyone nominated to run for any office, as a result of the Presidential Preference Primary. Nomination of a candidate for the office of President of the United States will occur at the national convention in Philadelphia.

Representatives of plaintiff De La Fuente on two occasions asked the Democratic Party of Georgia to reconsider its decision. (DPG Exh 1 & 2). Both requests addressed the issue that Mr. De La Fuente was not perceived as a substantial candidate. The Democratic Party of Georgia did not change its decision although it asked Mr. De La Fuente's representative to address two legal issues important to its decision. The De La Fuente campaign did not respond.

The request for an injunction against the Democratic Party is peculiar because the only action that the statute requires of it – submitting a list of names – was completed in November 2015. There is no further action that the party will take in connection to the Presidential Preference Primary.

To obtain a preliminary injunction the plaintiff must demonstrate 1) a substantial likelihood of success on the merits; (2) that plaintiff will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006); *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1262 - 63 (11th Cir. 2004). *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *All Care Nursing Serv., Inc. v. Bethesda Memorial Hospital*, 887 F.2d 1535, 1537 (11th Cir. 1989)).

The plaintiff bears the burden of persuasion on each of the elements. *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009); *Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001). Conclusory statements in the complaint or the brief in support of the motion are insufficient to sustain plaintiffs' claims. *Ashcroft v. Iqbal*, 566 U.S. 662 (2009).

### I. Plaintiffs are unlikely to succeed on the merits.

#### A. The Democratic Party of Georgia exercised First Amendment associational rights when determining candidates for the Presidential Preference Primary.

The Democratic Party is protected by a "constitutionally protected right of political association." *Cousins v. Wigoda*, 419 U.S. 477, 487 (1975).

The party, and its members, are entitled to protected status because the purpose of the party is to associate for "common advancement of political beliefs." *Kusper v. Pontikes*, 414 U.S. 51, 56 (1973). The associational rights "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 US 107, 122 (1981). *See, also California Democratic Party v. Jones*, 530 U.S. 567 (2000).

    The Call for the Democratic convention specifically acknowledges in Rule 12.K that state parties may exercise associational rights in determining which names should be on the ballot. The Rule, quoted by Plaintiffs (p. 4), begins by stating that the selection of candidates should be "based on the right of the Democratic Party to freely assemble and to determine criteria for its candidates" before going on to specify additional criteria to be used. The Supreme Court has recognized that a political party may limit the number of candidates on its ballot in order to avoid voter confusion that may arise when a large number of insubstantial candidates are included. *See, Lubin v. Panish*, 415 U.S. 709, 715-716 (1974).

    The Democratic Party of Georgia exercised its associational rights when its Executive Committee met on October 29, 2015 to select names it

4

wished to have on its Presidential Preference Primary ballot. Mr. De La Fuente acknowledges (Pl. brief, p.2-3) that the Call for the convention requires that he "has established substantial support for his or her nomination as the Democratic candidate for the Office of President of the United States." Plaintiffs have never made such a showing either to the DPG Executive Committee or to this Court. As far as can be determined, Mr. De La Fuente does not (and did not) have a political campaign organization in Georgia. He has not demonstrated a level of support among Georgia voters beyond that of the co-plaintiffs in this case. He cannot show name recognition that would lead to the conclusion that he was one of the "widely recognized, legitimate candidates." (Pl. brief, p. 3, quoting the DPG Delegate Selection Plan). Mr. De La Fuente has not participated in any debates of the major Democratic candidates.  Mr. De La Fuente request to be put on Democratic ballots has been rejected by multiple state parties.[1] As Judge Hinkle wrote in his order denying Mr. De La Fuente's motion for a preliminary injunction in Florida, "But the Secretary of State will not be compelled to put an *insubstantial* candidate on the ballot." *De La Fuente v. Democratic Party of Florida*, slip op CA No. 4:16cv26-RH/CAS (ND Fla 2016, Jan. 23, 2016)(emphasis in original). See DPG Exh. 3.

---

[1] Florida, Georgia, Michigan, South Carolina, Tennessee, Virginia, and Wisconsin will not include him on the ballot.  12 other states use caucuses instead of ballots. 11 states have not released decisions.

5

As the Supreme Court wrote in *Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 US 107, 123-124 (1981)

> A political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution. And as is true of all expressions of First Amendment freedoms, the courts may not interfere on the ground that they view a particular expression as unwise or irrational.

**B. Claims of discrimination based on ethnicity fail.**

Plaintiffs contend that Mr. De La Fuente was not placed on the ballot because of his ethnicity. They offer no evidence supporting the claim that ethnicity was considered in making decisions as to names to be included on the ballot, choosing instead to infer discrimination because candidates on the ballot were of a different ethnicity than him. As Mr. De La Fuente notes in his brief (p. 8), the Charter of the Democratic Party of Georgia guarantees opportunities to participate without discrimination based on twelve categories, including ethnic identity. Mr. De La Fuente did in fact participate in the process of selecting names by submitting his for consideration. The

fact that he was not chosen, without more, does not support an inference of discrimination.

It is evident that plaintiffs never believed that there was discrimination based upon ethnicity until they began searching for a cause of action. The request for reconsideration of the ballot access decision that the De La Fuente campaign sent to the Democratic Party never mentions potential discrimination on the basis of ethnicity as grounds. (DPG Exh 1.) The request seems to acknowledge that Mr. De La Fuente was not widely recognized as a candidate. ("Apparently, name recognition trumps substantive policy.") Similarly, Mr. De La Fuente's second request for reconsideration (DPG Exh 2) does not raise discrimination as an issue. Mr. De La Fuente acknowledged that the Democratic Party did not perceive that he was not a substantial candidate. ("The Executive Committee based its decision on the fact that it believed Mr. De La Fuente not to be a 'widely recognized, legitimate candidate,' we respectfully disagree.") In response to the requests, the Democratic Party of Georgia explained its position to the campaign on November 18, specifically asking Mr. De La Fuente's representative to address the associational rights issue and pointing out that the decision did not foreclose other avenues for participating in the election. (Exhibit C to Plaintiffs' complaint.) Mr. De La Fuente did not respond.

Plaintiffs' motion seeks protection under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et seq. That section "prohibits discrimination on account of race, color, or national origin in all programs and activities receiving financial assistance." *Sirpal v. University of Miami*, 684 F. Supp. 2d 1349 (S.D. Fla. 2010) (quoting *Humphrey v. United Parcel Service*, 200 Fed. Appx. 950, 952 (11th Cir. 2006). "Title VI, which is analyzed under an equal protection framework . . . bars only intentional discrimination . . . . Thus, to state a claim under Title VI, a plaintiff must allege facts establishing discriminatory intent." Neither Plaintiffs' complaint nor its motion specifies a federally funded program or activity engaged in discrimination. The failure to do so is fatal to the claim. *Assoko v. City of New York*, 539 F. Supp. 2d 728, 740-41 (S.D. N.Y. 2008). Neither the Complaint nor the motion for preliminary injunction, moreover, allege intent to discriminate. *See, e.g., Sirpal*, 684 F. Supp. 2d at 1357.

**C. Plaintiffs' claims that they are denied the right to vote fail.**

The right to vote is a fundamental right. *Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966). Plaintiffs do not claim here that their right to vote in general has been impaired by defendants. Plaintiffs' claim that they are harmed because voters will not be allowed to vote for Mr. De La Fuente

8

in a non-binding primary and that the individual plaintiffs are denied a right to vote for him in the same non-binding tally. Plaintiffs offer no authority for the assertion that they will suffer harm. *Duke v. Cleland*, 87 F.3d 1226, 1233 (1996) addressed this issue, saying "In this case, however, the voters have failed to offer any authority suggesting that they have a right to vote for their candidate of choice as a republican in a nonbinding primary. In fact, this court has previously determined that any burden on these voters is "considerably attenuated" and possibly nonexistent. *Duke*, 954 F.2d at 1531."

The decision to create a ballot that does not list Mr. De La Fuente as a candidate does not deprive Mr. De La Fuente from running, or his supporters from voting for him, as a third party or independent candidate. *See, Duke v. Cleland*, 954 F.2d 1526, 1531 (11th Cir., 1992). The actions taken by defendants do not impair a right to appear on the ballot as there are other avenues that Mr. De La Fuente can use to run. He simply does not have an absolute right to appear on the ballot of a particular party. *See, Belluso v. Poythress*, 485 F.Supp. 904 (ND Ga. 1980).

**II. There will be no irreparable injury to the plaintiff.**

The absence of Mr. De La Fuente's name on the Presidential

Preference Primary ballot neither prevents him from running for President nor does it hinder his supporters from becoming delegates to the national convention. The Presidential Preference Primary neither anoints candidates nor selects delegates. Its only function is to establish a ratio among major candidates that will be reflected in the composition of pledged delegates.

In order to obtain even a single delegate through Congressional District caucuses – the principal, but not exclusive, method of selecting Georgia delegates to the national convention – a candidate must get more than 15% of the Presidential Preference Primary ballots. (Delegate Selection Plan, Section III.A.6.a. "The National Convention delegates and alternates selected at the district level shall be allocated in proportion to the percentage of the primary vote won in that district by each preference, except that preferences falling below a 15% threshold shall not be awarded any delegates or alternates.")

Mr. De La Fuente must present evidence that he can meet this threshold. Unless he demonstrates that if put on the ballot he will get at least 15% of the vote then there is no harm accruing from the current make-up of the ballot. His claim of harm from the present situation is that he cannot qualify any delegates to the national convention. He will not qualify any delegates if put on the ballot unless he meets this basic threshold. In the absence of such a showing, Mr. De La Fuente cannot demonstrate irreparable harm.

## Conclusion

Plaintiffs cannot demonstrate either a substantial likelihood of success on the merits or an irreparable harm. The motion for injunction should be dismissed.

_____
MICHAEL  JABLONSKI
Counsel for Democratic Party of Georgia
Georgia Bar No. 385850

501 Pulliam Street SW
Suite 400
Atlanta GA, 30312

404-290-2977
Fax: 815-846-0719
michael.jablonski@comcast.net