IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROQUE "ROCKY" DE LA FUENTE,   ∗
BECKY HERDBERG, JOSE E.   ∗
HELENA, and JOSE GILBERTO   ∗      CIVIL ACTION FILE
PEREZ,   ∗      No. 1:16-CV-0256-RWS
  ∗
    Plaintiffs,   ∗
  ∗
v.   ∗
  ∗
BRIAN KEMP, Georgia Secretary of   ∗
State, and THE DEMOCRATIC   ∗
PARTY OF GEORGIA   ∗
  ∗
    Defendants.   ∗

### DEFENDANT BRIAN KEMP'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

COMES NOW BRIAN KEMP, Georgia Secretary of State, by and through his attorney of record, the Attorney General of the State of Georgia, and files this Brief in Support of his Motion to Dismiss.

### <u>INTRODUCTION</u>

The Plaintiffs filed this suit on January 28, 2016, claiming that the Democratic Party of Georgia's (DPG) decision not to include Roque De La Fuente as a candidate on the Democratic Presidential Preference Primary ballot violates their First and Fourteenth Amendment rights. The Plaintiffs seek an Order

1

directing Secretary Kemp to include the name of Plaintiff De La Fuente on the March 1, 2016 Presidential Preference Ballot and declaring that portions of Georgia's presidential preference primary statutes are unconstitutional. To the extent that the Plaintiffs are requesting any action regarding the March 16, 2016 Democratic Presidential Preference Primary, those claims are now moot because the primary has already been held.

To the extent that the Plaintiffs' remaining claims against Secretary of State Kemp are not moot, the Plaintiffs have failed to state a claim upon which relief can be granted for three reasons. First, the Plaintiffs' constitutional claims brought pursuant to 42 U.S.C. §1983 challenging Georgia's presidential preference primary statutes fail to state a claim because the Plaintiffs have failed to allege state action. Second, the Plaintiffs' vague and conclusory statements about racial discrimination fail to assert any cognizable claim for relief against Defendant Kemp. Third, the Plaintiffs' claim for relief under the Election Clause fails because that clause does not apply to presidential elections.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Plaintiffs, a prospective presidential candidate and three voters, allege that on October 23, 2015, Plaintiff De La Fuente wrote to the Executive Director of the DPG requesting that he be placed on the Democratic ballot for Georgia's

Presidential Preference Primary. Doc. 1-1 at 1. On October 29, 2015, the Executive Committee of the DPG met and selected the candidates who would appear on the 2016 Democratic Presidential Preference Primary ballot in Georgia. Doc. 1-1 at 2. Plaintiff De La Fuente's name was not included among the candidates who would appear on the Democratic ballot. *Id.* Plaintiff De La Fuente asked the DPG to reconsider its decision not to include him on the ballot. *See* Doc. 1-1 at 4. On November 18, 2015, counsel for the DPG informed Plaintiff De La Fuente's representative of the DPG's decision not to include De La Fuente on the ballot. *Id.* The Plaintiffs then waited ten weeks, until January 28, 2016, to file their Complaint (Doc. 1) and until January 29, 2016 to file a Motion for a Preliminary Injunction and Permanent Injunction. Doc. 2.

The Court held oral arguments on the Plaintiffs' Motion on February 4, 2016, and, on February 5, 2016, entered an order denying the Motion. Doc. 8. The Court held that the Plaintiffs did not meet the burden required for a preliminary injunction and that their request was barred by the equitable doctrine of laches. *Id.* The Plaintiffs filed a motion for reconsideration of that order on February 9, 2016 (Doc. 10), which the Court denied on March 7, 2016. Doc. 21. In the interim, the Plaintiffs filed a notice of appeal of the Court's initial denial of their Motion for a Preliminary Injunction and Permanent Injunction. Doc. 13. On March 23, 2016, the

parties agreed to dismiss that appeal as moot because the 2016 Democratic Presidential Preference Primary was held on March 1, 2016. On April 1, 2016, the Eleventh Circuit Court of Appeals entered an order dismissing the appeal. Doc. 23.

Defendant Kemp now moves this Court to dismiss the Plaintiffs' Complaint against him in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Motion to Dismiss Standard

A Rule 12(b)(6) motion requires an assessment of whether the plaintiff has set forth claims upon which a Court may grant relief. In considering a party's motion to dismiss, the Court accepts the non-movant's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the non-movant's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (holding that courts are to "eliminate any allegations in the complaint that are merely legal conclusions."). Additionally, "unwarranted deductions of fact in a complaint are not admitted as true for purposes of testing the sufficiency of plaintiff's allegations." *Sinaltrainal v. The Coca-Cola Co.*, 578

F.3d 1252, 1260 (11th Cir. 2009) (internal quotations omitted). A court is to make reasonable inferences in the plaintiffs' favor, but it is not required to draw plaintiffs' inferences. *Sinaltrainal*, 578 F.3d at 1260; *see also Amer. Dental Assoc.*, 605 F.3d at 1290 ("[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.") quoting *Iqbal*, 556 U.S. at 682. "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal*, 578 F.3d at 1260.

A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations; however,

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A pleading that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action is subject to dismissal. *Ashcroft*, 556 U.S. at 678 (2009).

5

**II.    The Plaintiffs have Failed to Sufficiently Allege that Secretary Kemp Violated their Constitutional Rights**

The Plaintiffs allege generally that their First and Fourteenth Amendment rights have been violated. Doc. 1 ¶ 1 and Counts 1 and 2. The Plaintiffs fail, however, to describe how Secretary Kemp, or any provision of state law, caused their alleged constitutional injury.

It is well established that 42 U.S.C. §1983 is the vehicle by which an individual may redress alleged violations of Constitutional rights.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  "A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156–57 (1978). As will be shown below, the conduct that the Plaintiffs complain of—De La Fuente not being included in the DPG's list of candidates for the Democratic Presidential Preference Primary Ballot—was not "committed by a person acting under the color of state law" (i.e., it was not state action).  In addition, the Georgia statutes in question are not unconstitutional on their face or as applied to the Plaintiffs during the 2016 Presidential Preference Primary Process.

6

A.   Count I of the Complaint Fails to State a Claim Against Secretary Kemp

The Plaintiffs make no allegations against Defendant Kemp in Count 1 of the Complaint, nor do they challenge the constitutionality or application of any Georgia statute in Count 1. More importantly, for the Plaintiffs' due process claim in Count 1 to succeed against Secretary Kemp, the Plaintiffs would have to have alleged some act or failure to act by Secretary Kemp, which they have not done. Count 1 consists entirely of allegations against the DPG, a private party, and the Plaintiffs have not raised any allegations that the Secretary of State had any role in the DPG's decision complained about in Count 1. Accordingly, Count 1 fails to state a claim against Defendant Kemp and should be dismissed as it applies to him. Fed. R. Civ. P. 12(b)(6).

B.   The Complaint Fails to State a Constitutional Claim Actionable under 42 U.S.C. § 1983 that Georgia's Presidential Preference Primary Statutes are Unconstitutional on their Face or as Applied to the Plaintiffs

The Eleventh Circuit Court of Appeals established the governing body of law for candidates who sue to have their names placed on a political party's presidential preference primary ballot in a series of decisions in the 1990s known as the *Duke* line of cases. Three of the cases involved access to the Republican Party's presidential preference primary ballot in Georgia (*Duke v. Cleland*, 954

7

F.2d 1526, 1530 (11th Cir. 1992) [hereinafter *Duke I*]; *Duke v. Cleland*, 5 F.3d 1399 (11th Cir. 1993) [hereinafter *Duke II*]); *Duke v. Massey*, 87 F.3d 1226, 1232, *reh'g en banc denied*, 98 F.3d 1355 (11th Cir. 1996) [hereinafter *Duke III*]); and one involved access to the same ballot in Florida (*Duke v. Smith*, 13 F.3d 388, 391 n.3 (11th Cir. 1994), *cert. denied*, 513 U.S. 867 (1994). Based on the Eleventh Circuit's holdings in these four *Duke* cases, along with other established Eleventh Circuit and Supreme Court precedent illustrated below, the Plaintiffs have failed to state a claim against Secretary Kemp.

### 1. The DPG's conduct is not state action

The Plaintiffs allege that the DPG's conduct in selecting which candidates would appear on the Democratic Presidential Preference Primary was state action. However, amendments to former O.C.G.A. § 21-2-193 have completely eliminated the State's involvement in political parties' selection of the candidates for their presidential preference primary.[1] Current Georgia law simply requires each party's executive committee to provide the Secretary of State with a list of the candidates to appear on the ballot for their presidential preference primary. O.C.G.A. § 21-2-193. Thus, the Plaintiffs' complaint is about a decision made by the DPG, with *no* state involvement. Based on the Eleventh Circuit's holding in *Duke v.*

---

[1] A copy of the former statute is attached to Def. Kemp's Resp. in Opp. to M. for Prelim Inj. (Doc. 5-3).

*Smith*, 13 F.3d at 391 n. 3, the decision by the DPG not to include De La Fuente on their presidential preference primary ballot is not state action.

Under Georgia's prior statutory framework, the committee that selected party candidates for the ballot was "a creature of state law and [therefore] its actions [were] attributable to the state." *Duke II*, 5 F.3d at 1403. However, the statute that the court was interpreting in *Duke II* has been revised. Under current Georgia law, the State plays no role is selecting a party's ballot candidates for the presidential preference primary. O.C.G.A. § 21-2-193. Therefore, the only conduct that the Plaintiffs' complaint addresses, the DPG's decision, is *not* state action, and Plaintiffs' claims premised on that conduct, are not actionable under 42 U.S.C. § 1983. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (explaining that only conduct committed by a person acting under color of state law is actionable under 42 U.S.C. § 1983).

       2.     *O.C.G.A. § 21-2-193 does not severely burden The Plaintiffs' First and Fourteenth Amendment rights and is narrowly tailored to serve a compelling state interest*

The Plaintiffs allege that Georgia's statutory scheme governing the presidential preference primary process, O.C.G.A. § 21-2-190 *et seq*, unconstitutionally infringes on the Plaintiffs' First and Fourteenth Amendment rights. The Plaintiffs primarily challenge O.C.G.A. § 21-2-193, which requires the

executive committee of political parties that are going to conduct a presidential preference primary to submit to the State the names of the candidates who will appear on the ballot.

First, as addressed above, Secretary Kemp submits that because state law no longer includes any state involvement in the selection of which candidates are to be placed on the ballot for a political party's primary, there was no state action and therefore, no constitutional violation. However, even if Plaintiffs could allege sufficient facts to assert state action, Georgia's statutory scheme would still survive constitutional scrutiny.

An analysis of whether a ballot access law violates the First and Fourteenth Amendments must follow a three-step process. *See Green Party of Ga. v. Georgia*, 551 Fed. Appx. 982, 983 (11th Cir. 2014) (holding that courts in the Eleventh Circuit should apply the three-part test in *Anderson v. Celebreeze*, 460 U.S. 780 (1983) to ballot access constitutional questions); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (describing a balancing test for constitutional challenges to election laws). First, a court should "evaluate the character and magnitude of the asserted injury to rights protected by the First and Fourteenth Amendments." *Id.* (citing *Bergland v. Harris*, 767 F.2d 1551, 1553–54 (11th Cir. 1985)). "Second, it must identify the interests advanced by the State as

justifications for the burdens imposed by the rules." *Id.* "Third, it must evaluate the legitimacy and strength of each asserted state interest and determine the extent to which those interests necessitate the burdening of the plaintiffs' rights." *Id.* As demonstrated below, the State's presidential preference primary statutory scheme passes this constitutional test.

Applying the first part of the *Anderson* test here, Plaintiff De La Fuente asserts a right to appear as a candidate on the Democratic Party's ballot because he "has selected the Democratic Party as the political party with whom *he* chooses to seek the nomination for President." Doc. 1 at ¶ 3 (emphasis added). However, De La Fuente and the other Plaintiffs "do[] not have a right to associate with an 'unwilling partner.'" *Duke*, 87 F.3d at 1232 (quoting *Duke I*, 954 F.2d at 1530). Thus, the principal "right" that the Plaintiffs are asserting simply does not exist.

Turning to the second *Anderson* factor, the Supreme Court has carved out a clear responsibility for states to regulate elections to prevent chaos. The Court has recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens,

however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons*, 520 U.S. at 358 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

Here, Georgia presidential preference primary laws embody the clear interests that the state has in providing a fair, honest, and non-confusing ballot. In addition, the laws do not infringe on political parties' independent decisionmaking for choosing which candidates will appear on their ballots. State law provides that the executive committee of each political party is responsible for identifying the candidates that the party wants to appear on its presidential preference primary ballot. O.C.G.A. § 21-2-193. As discussed below, the statute is a "reasonable, nondiscriminatory restriction" that satisfies the State's interest in maintaining fair and honest primary elections and does not severely burden any of the Plaintiffs' rights.

In *Duke v. Massey*, the plaintiffs, a candidate and his supporters, sued the Florida Secretary of State and the members of the Republican Party's Executive Committee, alleging that the denial of Duke's request to appear on the Republican Presidential Preference Primary ballot violated the plaintiffs' "rights of free speech, right of association, right to equal protection, right to run for office, right to vote, and right of due process guaranteed under the *First and Fourteenth*

*Amendments to the Constitution of the United States*." *Duke*, 87 F.3d at 1229. The Eleventh Circuit recognized that the Republican Party had "a right to 'identify the people who constitute the association and to limit the association to those people only.'" *Id.* at 1232 (quoting *Duke I*, 954 F.2d at 1530). While recognizing that Duke had a First and Fourteenth amendment right "to be free from state discrimination . . . and a procedural due process right to have his petition to be placed on the ballot to be free from a committee's 'unfettered discretion' in rendering a decision . . . those interests [did] not trump the [ ] Party's right to identify its membership . . . nor the state's interests in protecting the [ ] Party's right" to do so. *Id.* (internal citations omitted). As a result, the Eleventh Circuit held that Duke's rights had *not* been severely burdened.[2]

Even applying strict scrutiny to this case would not afford the Plaintiffs the remedies that they seek. Despite holding that Duke's rights had not been severely burdened, "to err on the side of caution," the Eleventh Circuit in *Duke v. Massey,* 87 F.3d at 1233, applied strict scrutiny and held that Georgia has a compelling

---

[2] Similarly, the Court held that Duke's supporters did *not* have a right to vote for him as a Republican nominee. *Id.* Duke's supporters were free, as are De La Fuente's supporters here, to vote for him as an independent candidate in a general election. *Id.*

state interest in "protecting political parties' rights to define themselves."[3] *Id.* at 1234. The Court also recognized the State's significant interest in "structuring and regulating elections in order to facilitate order, honesty, and fairness." *Id.*

The Supreme Court has repeatedly recognized political parties' rights to run their own affairs. *See New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008) ("A political party has a *First Amendment* right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform."); *Democratic Party of United States v. Wisconsin*, 450 U.S. 107, 122 (1981) ("This Court  has recognized that the inclusion of  persons unaffiliated with a political party may seriously distort its collective decisions--thus impairing the party's essential functions--and that political parties may accordingly protect themselves from intrusion by those with adverse political principles.") (citations omitted); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986) (state prohibited from limiting voters in party primaries to those registered with the party); *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989) (party successfully

---

[3] This holding is hardly remarkable considering the Supreme Court's admonition that "a State, or a court, may not constitutionally substitute its own judgment for that of the Party. A political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution." *Democratic Party of United States v. Wis.*, 450 U.S. 107, 123–124 (1981).

14

challenged statute prohibiting political party endorsement of candidates in primaries); *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) (party successfully challenged a blanket primary system).

The DPG has a right to decide which candidates best represent the interests of the Party and to forward only the names of those candidates to the Secretary of State for placement on the ballot.  The State of Georgia has a compelling interest in ensuring that political parties' right to run their own affairs is maintained. Moreover, Georgia has an interest in preventing a crowded ballot and voter confusion. *Bullock v. Carter*, 405 U.S. 134, 144–45 (1972) ("[A] State has a legitimate interest in regulating the number of candidates on the ballot."). For the 2016 Presidential Election, over two hundred candidates with a Democratic Party affiliation have registered with the Federal Election Commission (FEC) as candidates for the office of President of the United States. *See* 2016 Presidential Form 2 Filers, Fed. Election Comm'n, http://www.fec.gov/press/resources/2016presidential_form2pty.shtml (last visited Apr. 8, 2016). Requiring the Democratic Party of Georgia, and the Secretary of State, to provide all of these candidates a place on the ballot would simply add to voter confusion. "When insubstantial candidates are added to a ballot, the rights of voters are compromised, not enhanced." *De La Fuente v. Democratic Party of*

*Florida*, slip op. CA No. 4:16cv26-RH/CAS (N.D. Fla. 2016)[4]  (citing *Lubin v. Panish*, 415 U.S. 709, 715-716 (1974)).

Finally, Georgia's presidential preference primary law passes the third *Anderson* factor because O.C.G.A. § 21-2-193 is narrowly tailored to serve Georgia's compelling state interest to ensure that a political party's right to run its own affairs is maintained, and in regulating the number of candidates on the presidential preference primary ballots.  In light of the *Duke* cases, the Plaintiffs cannot demonstrate that De La Fuente should have been allowed to be placed on the Georgia Democratic Presidential Primary Ballot simply because he selected the Democratic Party as the political party with which he chooses to seek the nomination for President. Accordingly, the Plaintiffs' facial and as applied challenges to § 21-2-193 should be dismissed for failure to state a claim.

C. The Plaintiffs have not Made Allegations as to Why O.C.G.A. § 21-2-199 is Unconstitutional

To the extent that the Plaintiffs are attempting to challenge O.C.G.A. § 21-2-199, they have done nothing more than cursorily reference the statute. Section 21-2-199 allows the parties to elect committee members at the presidential preference primary. The statute provides:

---

[4] A copy of this slip op. is attached to Def. Kemp's Resp. in Opp. to M. for Prelim. Inj. (Doc. 5-4).

**Election of political party committee members or officers at primary.**

The presidential preference primary may be considered as a general primary for any political party wishing to elect committee members or officers therein.  Such party shall prescribe by state party charter, bylaws, or rules and regulations regarding qualifying of candidates and the fixing and publishing of qualifying fees, if any.

O.C.G.A. § 21-2-199.[5] The Plaintiffs do not clearly state what they find unconstitutional about this statute. Accordingly, statements in the complaint related to § 21-2-199 are nothing more than mere labels and conclusions and should be dismissed for failure to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555–56.

D. <u>Plaintiffs' Have not Sufficiently Alleged Invidious Racial Discrimination</u>

In addition to asserting a challenge to Georgia's presidential preference primary statutes, the Plaintiffs also assert an equal protection claim for "de facto discrimination  . . . on the basis of national origin." Doc. 1 ¶ 32. The Plaintiffs appear to be arguing that their claim is premised, at least in part, on the fact that Georgia has a Hispanic population of roughly 9.3% and none of the candidates that appear on the Georgia ballot as Democratic Party candidates are Hispanic. *See*

---

[5] The Plaintiffs' complaint quotes only the last sentence of the statute, and they appear to assert that this statute somehow pertains to the qualification of presidential candidates. Doc. 1 ¶ 10 and p. 10 ¶ D. It clearly does not.

Doc. 1 ¶ 35. These allegations are insufficient to allege, much less prove, an equal protection claim.

An equal protection claim requires a showing that a plaintiff has been the victim of *intentional* discrimination. *Batson v. Kentucky*, 476 U.S. 79 (1986) (emphasis added). The requisite discriminatory purpose must be "more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (internal citations omitted). Here, the Plaintiffs do not allege that either the DPG or the State acted with discriminatory intent.[6]  It is insufficient for the Plaintiffs to assert that the DPG's decision has an adverse impact on them, even if that were true.

E.  Plaintiffs Cannot Prevail on their Title VI Claim.

Title VI provides that:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

---

[6] Of course, here, even if Plaintiffs had sufficiently alleged that the DPG had acted with discriminatory intent, the DPG is a private not state actor and therefore such allegations would still be insufficient to state a claim for an Equal Protection violation.  *See* p. 6, Sec. II, above.

42 U.S.C. § 2000d.

First, like the equal protection clause, Title VI prohibits only intentional racial discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). *See also*, *United States v. Fordice*, 505 U.S. 717, 732 n.7 (1992).

Second, the United States Supreme Court has repeatedly held that Title VI invokes Congress's power under the Spending Clause and should be treated as a quasi-contractual provision under which those who voluntarily accept Federal funds must spend those funds in a non-discriminatory manner. *See, e.g. Barnes v. Gorman*, 536 U.S. 181, 186–87 (2002); *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 599 (1983) (citing 110 Cong. Rec. 6546 (1964) (Sen. Humphrey)). "Title VI rests on the principle that 'taxpayers' money, which is collected without discrimination, shall be spent without discrimination.'" *Guardians*, 463 U.S. at 599 (quoting 110 Cong. Rec. 7064 (Sen. Ribicoff)). Thus, enforcement actions under Title VI are cognizable only if the allegedly discriminatory action is being undertaken pursuant to the acceptance and spending of Federal funds. 42 U.S.C. § 2000d. Here, the Plaintiffs have not alleged that De La Fuente was subject to discrimination in "any program or activity receiving Federal financial assistance." *Id.*

F.  <u>The Plaintiffs do not have a Claim Pursuant to the Elections Clause.</u>

The Elections Clause provides:

The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const., Art. I, § 4, cl. 1. As the text of the Constitution provides, the Elections Clause pertains only to *congressional elections*. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 133 S. Ct. 2247, 2268 n.2 (2013) (J. Thomas, dissenting) (explaining that in contrast "the state legislature's power to select the manner for appointing [presidential] electors is plenary.") (quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000)). "The Elections Clause has two functions. Upon the States it imposes the duty ('shall be prescribed') to prescribe the time, place, and manner of electing Representatives and Senators; upon Congress it confers the power to alter those regulations or supplant them altogether." *Arizona*, 133 S. Ct. at 2253 (citing *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 804-805 (1995)). Here, the Plaintiffs' challenge is to the regulation of the presidential preference primary. The Elections Clause has no application.

## **CONCLUSION**

Based on the foregoing, Defendant Kemp respectfully requests that the Court dismiss the Plaintiffs' Complaint against him in its entirety.

Respectfully submitted,

SAMUEL S. OLENS          551540
Attorney General

DENNIS R. DUNN          234098
Deputy Attorney General

RUSSELL D. WILLARD   760280
Senior Assistant Attorney General
rwillard@law.ga.gov

/s/Julia B. Anderson
JULIA B. ANDERSON      017560
Senior Assistant Attorney General
janderson@law.ga.gov

/s/Cristina Correia
CRISTINA CORREIA        188620
Assistant Attorney General
ccorreia@law.ga.gov

/s/Josiah Heidt
JOSIAH HEIDT              104183
Assistant Attorney General
jheidt@law.ga.gov

Please address all
Communication to:

CRISTINA CORREIA
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
(404) 656-7063

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the forgoing Defendant's Brief in Support of His Motion to Dismiss was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2016, I electronically filed Defendant Brian Kemp's Brief in Support of Motion to Dismiss using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

J. M. Raffauf
Office of J.M. Raffauf
248 Washington Ave.
Marietta, GA  30060

Jerry Wilson
P.O. Box 971
Redan , GA  30074

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  NONE

This 11th day of April, 2016.

/s/Cristina Correia
CRISTINA CORREIA            188620
Assistant Attorney General

23